Irving Moresh, complainant-respondent,

v.

Daniel T. O'Regan, prosecutor, et al., defendants-appellants.

[Submitted February 12th, 1937. Decided July 7th, 1937.]

*Mr. David T. Wilentz, Mr. Louis J. Cohen, Mr. Daniel T. O'Regan* and *Mr. Frank G. Schlosser,* for the defendants-appellants.

*Mr. William Boorstein* and *Mr. Julius Lichtenstein,* for the complainant-respondent.

The opinion of the court was delivered by

Donges, J.

This appeal brings up a decree of the court of chancery entered as a final decree upon stipulation that the petition and exhibits shall be taken as stipulated facts and that the determination thereon shall be taken as on final hearing and a final decree entered.

The proceeding was commenced under the Declaratory Judgments act. The petition for injunction and other relief was filed to ascertain the rights of the complainant, Moresh, in view of contracts he made with individuals in Bayonne calling for the payment monthly of a stipulated sum in return

for which Moresh would keep in condition, by tightening and otherwise, the glass windows in the contractees' store windows, and in case of breakage would replace the glass. Moresh also sought to restrain the prosecutor of the pleas from pressing an indictment theretofore found for an alleged violation by such contracts of the Insurance law, and from instituting or bringing to the attention of the grand jury proceedings involving other alleged violations by reason of like contracts of complainant; and to restrain the commissioner of banking and insurance from instituting and prosecuting any suits for penalties for the violation of the act by reason of such contracts.

The vice-chancellor held that the contracts in question were not contracts of insurance; second, that the Insurance law did not prohibit individuals from engaging in the insurance business; third, that the court of chancery had power to restrain the prosecution of an indictment theretofore found and to restrain the submission of any like questions to the grand jury; fourth, that the court of chancery had power to enjoin the commissioner of banking and insurance from instituting and prosecuting civil proceedings, in their nature punitive, for alleged violations of the act; and fifth, that the court had power to proceed and determine all the questions under the Declaratory Judgments act.

We are met, *in limine,* with serious questions touching the jurisdiction of equity to afford relief in the circumstances of this case.

It is true that the jurisdiction of the court of chancery was not questioned in that court, nor is the question argued here. It is well settled, however, that jurisdiction may not be conferred by consent, nor assumed by acquiescence. Chief-Justice Gummere, speaking for this court, in *Long Branch* v. *Hoch, 99 N. J. Eq. 356,* said:

"It is enough to say in disposing of this contention that counsel cannot, by mere silence or by express consent, confer upon courts of equity the power to determine litigated matters which, under our judicial system, must be settled in a court of law, or, stated in another way, strip the law courts of juris-

diction cónferred upon them under the constitution and transfer it to courts of equity. If counsel for the defendants had moved to dismiss the bill for lack of jurisdiction in a court of equity, a refusal to grant this motion could not have been legally justified."

To the same effect is *Pridmore* v. *Steneck*, decided by this court at the February term, 1937, *122 N. J. Eq. 35*.

We now take up the question of jurisdiction. Mr. Justice Gray, writing the opinion for the United States supreme court in *In re Sawyer, 124 U. S. 200; 31 L. Ed. 402*, said:

"The office and jurisdiction of a court of equity, unless enlarged by express statute, are limited to the protection of rights of property. It has no jurisdiction over the prosecution, the punishment or the pardon of crimes or misdemeanors, or over the appointment and removal of public officers. To assume such a jurisdiction, or to sustain a bill in equity to restrain or relieve against proceedings for the punishment of offenses, or for the removal of public officers, is to invade the domain of the courts of common law, or of the executive and administrative department of the government."

He further says: "Any jurisdiction over criminal matters that the English court of chancery ever had became obsolete long ago, except as incidental to its peculiar jurisdiction for the protection of infants, or under its authority to issue writs of *habeas corpus* for the discharge of persons unlawfully imprisoned. * * *

"From long before the Declaration of Independence it has been settled in England that a bill to stay criminal proceedings is not within the jurisdiction of the court of chancery, whether those procedeings are by indictment or by summary process." And he cites cases to support. He further says:

"The modern decisions in England, by eminent equity judges, concur in holding that a court of chancery has no power to restrain criminal proceedings, unless they are instituted by a party to a suit already pending before it, and to try the same right that is in issue there."

In *Ex parte Young, 209 U. S. 123*, Mr. Justice Peckham, writing the opinion for the same court, said that it is the

general rule that a court of equity has no jurisdiction to enjoin criminal proceedings by indictment or otherwise under the state law, and then said:

"But there are exceptions. When such indictment or proceeding is brought to enforce an alleged unconstitutional statute, which is the subject-matter of inquiry in a suit already pending in a federal court, the latter court, having first obtained jurisdiction over the subject-matter, has the right, in both civil and criminal cases, to hold and maintain such jurisdiction, to the exclusion of all other courts, until its duty is fully performed.. * * * But the federal court cannot, of course, interfere in a case where the proceedings were already pending in a state court."

And he further says that if the proceedings are begun after the court of equity has taken jurisdiction, then and then only, they may be enjoined.

We conclude that the court of chancery, in the situation herein, was without jurisdiction to enjoin prosecution of indictments.

The relief sought against the commissioner of banking and insurance to restrain the collection of the penalties provided by the Insurance law for a violation thereof is likewise without jurisdiction of the court of chancery.

"Finally, whenever any forfeiture is provided for by a statute, to be incurred on the doing or not doing some specified act, equity can afford no relief from it, and the same is true of a statutory penalty." *1 Pom. Eq. Jur. (4th ed.)* ¶ *458 p. 870.*

In *Brunetto* v. *Town of Montclair, 87 N. J. Eq. 338,* Mr. Justice Trenchard, speaking for this court, said:

"An injunction will not issue to restrain a prosecution for a penalty under a municipal ordinance regulating the erection of buildings on the mere ground that such an ordinance is invalid or that it does not bind the property of the party seeking the injunction. Such grounds, if sound, constitute a complete defense to the prosecution in a court of law, and, if convicted, he has an adequate remedy by *certiorari. Bloomfield* v. *Glen Ridge, 55 N. J. Eq. 505."* See, also, *21 C. J. 99.*

The petition in the instant case also invokes the jurisdiction of the court of chancery on the ground that the respondent is threatened with a "multiplicity of suits, indictments and criminal trials, and [the carrying out of such threats] will result in irreparable injury to him and his said business."

Mr. Pomeroy in his work on *Equity Jurisprudence (4th ed.) p. 394 ¶ 245,* states four classes of cases in which equity takes jurisdiction on the ground of multiplicity. The second class is the one, if any, into which the present case would fall and that is stated to be: "2. Where the dispute is between two individuals, A and B, and B institutes or is about to institute a number of actions either successively or simultaneously against A, all depending upon the same legal questions and similar issues of fact, and A by a single equitable suit seeks to bring them all within the scope and effect of one judicial determination." Such is the situation here, since the state, acting through its two agents, the prosecutor of the pleas and the commissioner of banking and insurance, is threatening to enforce the statute in question against the complainant. In both proceedings, to wit, the criminal prosecution and suits to collect the penalties, the questions of law and fact would be the same, namely, is the statute valid, does it apply to the complainant's business and has he violated it? The threatened prosecutions would be successive actions for repeated violations of the statute. It is stated by Mr. Pomeroy, paragraph 253, page 427, that in such cases equity will not take jurisdiction and give relief by way of restraint unless the plaintiff's right has been established in at least one action at law in his favor. In the present case there has been no determination at law of the controverted questions.

There is some conflict of authority as to the jurisdiction of equity to enjoin criminal and *quasi*-criminal prosecutions where a multiplicity of such proceedings is threatened and where irreparable injury is said to be threatened, although the weight of authority denies this jurisdiction.

"The rule (that criminal prosecutions will not be enjoined) applies whether the prosecution is by indictment or by summary process, and to prosecutions which are merely threatened or anticipated as well

as to those which already have been commenced. It also applies, although the ordinance or statute on which the prosecution is based is void, although the party seeking the injunction is not guilty of a violation of the ordinance or statute; * * * or although the enforcement of the invalid law or ordinance complained of will result in a multiplicity of prosecutions; but there are some decisions and *dicta* to the contrary." *32 C. J. 281.*

In *Fitts* v. *McGhee, 172 U. S. 516,* the *Sawyer Case, supra,* is relied on, and it is further stated:

"That the defendants may be frequently indicted constitutes no reason why a federal court of equity should assume to interfere with the ordinary course of criminal procedure in a state court."

In *City of Denver* v. *Beede, 25 Col. 172; 54 Pac. Rep. 624,* it was held:

"A court of equity will not restrain a prosecution at law when the question is the same at law as in equity. *Wallack* v. *Society, 67 N. Y. 23.* An exception to this rule exists when an injunction is necessary to protect a party from oppressive and vexatious litigation, but in such cases the court only acts by granting an injunction after the controverted right has been determined in a previous action in favor of the party applying for such relief.

"As before suggested, if the ordinance is invalid, we cannot assume that the court in which the appellee may be tried for its violation will not so hold, if this question is presented; nor can we presume that, if he is acquitted upon this ground, the officers of the city will continue to harass him with further arrests; so that if his own contention be true, he is in no danger of suffering the irreparable injury of which he complains; nor would he, under such circumstances, be subjected to a multiplicity of suits. It would doubtless be convenient for appellee to have the judgment of the court upon the validity of the ordinance before subjecting himself to liability for accumulated penalties; but, if arrested and convicted, and he chooses to take the chances of ultimately defeating the ordinance upon the ground of its invalidity that is no ground for equitable interference."

In *Brown* v. *Mayor, &c., of Birmingham, 140 Ala. 590; 37 So. Rep. 173,* the court said:

"The averment that repeated and numerous prosecutions are threatened is not a sesame to open the gates of equity injunctive jurisdiction to the complainant, on the idea of preventing a multiplicity of suits. * * * Moreover, the application of the doctrine of multiplicity of suits, sought to be made here, would involve this general proposition: That, whenever a person is being prosecuted severally for numerous alleged offenses, he may, to avoid their multiplicity, have all the prosecutions enjoined, and the several cases tried in one proceeding in the chancery court."

In *G. W. Mart & Son* v. *City of Grinnell, 194 Iowa 499; 187 N. W. Rep. 471,* the supreme court of Iowa said:

"We will not presume or assume that a court of law will hold an invalid ordinance valid. The same objections can be raised in a court of law as in equity, and the same questions may be presented therein by way of objection to its validity, or the constitutionality of the law in question. If the defendant is convicted, his right of review on appeal exists; if acquitted, we will not presume that the officials of a city would continue to harass the defendant with further arrests. Under the facts pleaded there is no danger that plaintiffs will suffer great or irreparable injury, nor would they be subject to a multiplicity of suits under the circumstances of this case."

In *Wallack* v. *Society for the Reformation of Juvenile Delinquents, &c., 67 N. Y. 23,* it is stated.

"The general rule is that the court will not restrain a prosecution at law, when the question is the same at law and in equity. An exception exists where an injunction is necessary to protect a defendant from oppressive and vexatious litigation. But the court acts in such case by granting an injunction only after the controverted right has been determined in favor of the defendant in a previous action."

Tested by these rules, we are of the opinion that a case properly invoking the jurisdiction of the court of chancery upon the score of threatened multiplicity of suits has not been presented by the pleadings in the instant case. The questions sought to be presented by the present litigation could properly

be raised in a trial of the indictment found in the Hudson county court, and could also be raised in defense of a suit for penalty by the commissioner of banking and insurance. We cannot presume that these public officials, if the first cases tried resulted in decisions in favor of the complainant here, would continue to molest him with further actions based upon the same questions of law and similar issues of fact.

As stated above, the proceeding herein is by way of petition under the Declaratory Judgments act (*P. L. 1924 ch. 140 p. 312*), but that act does not confer jurisdiction on any court over any subject-matter which did not theretofore fall within its jurisdiction. It merely empowered the entry of the declaratory judgments in courts of competent jurisdiction where no further relief could be granted at the time the proceeding was instituted.

We are of the opinion that there is in the present case no ground upon which the jurisdiction of the court of chancery can be placed. It is to be noted that we are not passing upon the jurisdiction of that court in a case where a complainant has been subjected to repeated and vexatious prosecutions after his position has been established in a proceeding at law based upon the same facts and law.

The decree is reversed, with instructions to dismiss the petition.

HEHER, J. (Dissenting.)

I have no doubt that respondent was engaged in the indemnity insurance business. But the provision of such indemnity by an individual is not within the prohibition of the statute relating to the transaction of insurance business. That question was definitely settled by this court in *Solomon* v. *New Jersey Indemnity Co., 94 N. J. Law 318; affirmed, 95 N. J. Law 545*. It is not now open to re-examination. The nonexercise of the amendatory power in the intervening period is indicative of legislative acquiescence in this judicial interpretation.

I am in entire accord with the view of the majority that it was not a legitimate equitable function to enjoin the prose-

cution of the indictment returned against respondent. Nevertheless, it is the undeniable jurisdiction of equity to prevent a multiplicity of suits where necessary to subserve the ends of justice.

My brethren of the majority concede that the prevention of a multiplicity of actions to recover penalties for successive violations of the Insurance act, as threatened here, is within the second class of cases stated by Professor Pomeroy to be the subject of equitable interposition on this ground. But it is said (also on the authority of that author, section 253) that equity will not assume jurisdiction in such cases "unless the plaintiff's *right* has been established in at least one action at law in his favor;" and it is pointed out that in the instant case "there has been no determination at law of the controverted questions." The fact is, however, that he was there dealing with a subdivision of this class in which "the defendant has brought, or threatens to bring, successive actions at law to recover the same subject-matter from the plaintiff, where from the rules of the legal procedure the title is not determined by a judgment in any such action or number of actions;" and he observed that "this branch has therefore been ordinarily confined to cases of successive actions of ejectment to recover the same tract of land from the plaintiff," where "it follows as a matter of course that equity will not interfere on behalf of the plaintiff, and restrain the defendant's proceedings, until the plaintiff's *title* has been sufficiently established by the decision of at least one action at law in his favor." In this class of cases, he remarks, "the interference of equity assumes that the plaintiff's legal right and title have been clearly determined, and its sole object is to quiet that title by preventing the continuance of a litigation at law which has become vexatious and oppressive, because it is unnecessary and unavailing."

But in respect of the second branch of this class of cases, *i. e.,* where "the single defendant has brought a number of simultaneous actions at law against the plaintiff, all depending upon similar facts and circumstances, and involving the same legal questions, so that the decision of one would vir-

tually be a decision of all the others," the author declares (section 254) that equity *may* interfere and restrain the prosecution of the actions, "so that the determination of all the matters at issue between the two parties may be brought within the scope of one judicial proceeding and one decree, and a multiplicity of suits may thereby be prevented." While such exercise of equitable jurisdiction is termed "extraordinary," since the "rights and interests involved are wholly legal, and the substantial relief given by the court is also purely legal," the authority indisputably exists, and should be exerted in conformity with a sound discretion, to serve "the ends of justice, and to shield the plaintiff from a litigation which is evidently vexatious." It is said that equitable interference in such cases is not "to restrain absolutely and completely any and all trial and decision of the questions presented by the pending actions at law," but "to prevent the repeated or numerous trials, and to bring the whole within the scope and effect of one judicial investigation and decision." *Pom. Eq. Jur.* § *254.*

While this is undoubtedly the general rule, there is a recognized class of cases, bearing a close analogy to those properly the subject of bills of peace, technically so-called, in which, under this established head of concurrent equity jurisdiction, the injunctive process will go to protect the complainant from continued and vexatious litigation. This jurisdiction is grounded in the general doctrine of public policy that an end ought to be put to litigation. The design of a bill of peace is "to procure repose from perpetual litigation. * * * The obvious ground of the jurisdiction of courts of equity in cases of this sort is to suppress useless litigation and to prevent multiplicity of suits." *Story Eq. Jur.* (*14th ed.*) § *1173.* Under this head, equitable relief has been awarded in cases involving successive prosecutions for violations of statutes or ordinances claimed to be unconstitutional or invalid, successive actions to recover disputed royalties, and like cases. And the mere threat of the institution of successive actions to recover penalties for each transaction claimed to be within the statutory ban may, in the special

circumstances, justify equitable interposition on this ground. *Boise Artesian Hot and Cold Water Co.* v. *Boise City, 213 U. S. 276; 29 S. Ct. 426; 53 L. Ed. 796; Cleveland* v. *Cleveland City Railway Co., 194 U. S. 517; 48 L. Ed. 1102; Detroit* v. *Detroit Citizens' Street Railway Co., 184 U. S. 368; 46 L. Ed. 592; City of Hutchinson* v. *Beckham, 118 Fed. Rep. 399; Dows* v. *Chicago, 78 U. S. (11 Wall.) 108; 20 L. Ed. 65; 21 C. J. 76.* The probability of a multiplicity of suits, if thereby complainant would be required to "submit to daily interruptions" of his business, suffices. *City of Hutchinson* v. *Beckham, supra.* And where the general public interest will be advanced by a speedy and final determination of the question at issue, there is an added reason for equitable intervention. *Cleveland* v. *Cleveland City Railway Co., supra; Detroit* v. *Detroit Citizens' Street Railway Co., supra.*

But, however this may be, it cannot be gainsaid that, while equity may refuse relief in all cases falling into this general category until after the right has been determined at law, such determination is not a jurisdictional prerequisite. Even where the title to real estate is in controversy, the rule that the title must be determined by at least one successful trial at law before equity will intervene is "one of expediency and policy," rather than an essential condition and basis of equitable jurisdiction. *Pom. Eq. Jur.* § *252.*

Thus it is that in this particular respect, *i. e.,* the prevention of a multiplicity of actions to safeguard respondent against oppressive and vexatious litigation, or irreparable injury, the subject-matter of the bill of complaint is fundamentally within the domain of equitable cognizance; and it is the settled rule, lately reiterated by this court in *Pridmore* v. *Steneck, 122 N. J. Eq. 35,* that an objection to the exercise of this general jurisdiction in the individual case, *e. g.,* on the ground that the controverted right had not been determined at law, must ordinarily be definitely raised *in limine,* or it will be regarded as waived, and the decree will not be tainted with error. This principle was likewise applied in *Detroit* v. *Detroit Citizens' Street Railway Co., supra.*

Here, there was not only a lack of timely objection, but the

commissioner of banking and insurance, representing the state, and the respondent joined, in the court below and on the argument of this appeal, in a prayer for a resolution, in the public interest, of the meritorious question. In the circumstances, the determination of the basic issue was, it seems to me, a proper exercise of equitable jurisdiction in an established field. It was respondent's right to continue the transaction of his business as he had been doing for many years, and to be rid of the oppressive and vexatious litigation, based upon claimed successive violations of this inapplicable statute, that would of necessity result in serious injury to his property rights. Moreover, the speedy decision of the question was in the public interest.

My view therefore is that the decree should be modified in accordance with these principles, and, as so modified, affirmed.

Chief-Justice Brogan, Judge Hetfield and Judge Rafferty join in this dissent.

*For affirmance with modification*—THE CHIEF-JUSTICE, HEHER, HETFIELD, RAFFERTY, JJ. 4.

*For reversal*—PARKER, LLOYD, CASE, BODINE, DONGES, PERSKIE, DEAR, WELLS, WOLFSKEIL, COLE, JJ. 10.