[S. F. No. 17171. In Bank. Nov. 15, 1946.]

TRANSPORTATION GUARANTEE COMPANY, LTD. (a Corporation), Respondent, v. HAROLD JELLINS, Appellant.

H. W. Glensor and Hilary H. Crawford for Appellant.

Robert W. Kenny, Attorney General, and T. A. Westphal, Jr., Deputy Attorney General, as Amici Curiae on behalf of Appellant.

Charles S. Wheeler, Jr., and Donovan O. Peters for Respondent.

SCHAUER, J.—This case is before us on a judgment roll appeal by defendant from a judgment awarding plaintiff $1,950 damages for the breach by defendant of two certain motor truck maintenance contracts. The sole ground for reversal urged by defendant is the contention (in his language) ''that the two contracts are in a material part, contracts of insurance. If this contention be upheld, then it follows as a necessary conclusion that they are void as against public policy, because it was an admitted fact at the trial, and the court found, that the plaintiff was not licensed to transact an insurance business. . . .'' The trial court found adversely to defendant upon all issues of fact, including an issue as to the proper construction of the contracts, and, since the evidence is not before us, the findings are not open to question. We are satisfied, for the reasons hereafter more particularly delineated, that the judgment must be affirmed.

The two contracts in question are designated, respectively, as ''Guaranteed Maintenance Contract No. 136'' and ''Guaranteed Maintenance Contract No. 145.'' Contract No. 136 relates to the maintenance of a particularly identified International motor truck and No. 145 to the maintenance of a certain Kleiber motor truck. The court found, specifically, that ''in and by said contract 136, plaintiff agreed, among other things, to maintain said International motor truck in mechanical repair, to garage and fuel said motor truck and to *cause the same to be insured.* That in consideration for such *services,* defendant agreed to pay to plaintiff the sum of $55.25 per month, plus 14 cents for each mile said motor truck traveled; that said contract 136 was to continue in effect until said truck had traveled 40,000 miles from and after the date of said Contract 136''; and that ''in and by said contract 145 plaintiff agreed, among other things, to maintain said Kleiber truck in mechanical repair, and to garage, fuel and *cause said truck to be insured;* that in consideration of such *services,* defendant agreed to pay to the plaintiff the sum of $49.42 per month plus 9 cents for each mile said Kleiber truck traveled; that said contract 145 was to continue in effect until said truck had traveled 90,000 miles from and after the date thereof.'' (Italics added.)

The court further found that plaintiff and defendant

entered into Contract No. 136 on or about September 1, 1930, and into Contract No. 145 on or about June 1, 1932, and, in substantially the same language as to each contract, that "immediately upon the execution . . . [thereof] plaintiff entered into the performance of the same, and thereafter continued to perform all the terms, conditions and obligations of said contract . . . thereby imposed upon the plaintiff, to and including April 3, 1940; that on said date defendant, by notice in writing to the plaintiff, without right, cause or excuse, purported to terminate said contract . . . and repudiated the same and then and thereafter refused to permit plaintiff to continue in the performance thereof, although plaintiff was ready, able and willing to perform the same and then offered to continue in the performance.''

Certain language in the contracts, which seemingly is inconsistent with other provisions thereof, is pointed to by defendant as constituting what he claims to be "insuring clauses." Contending that the language of these clauses *can* be construed to constitute an insurance obligation it is urged that it *should* be so construed because "If there is any ambiguity [in an insurance contract] it is to be construed most strongly against the insurer." This argument is entitled to no weight since it seeks to persuade that plaintiff *is* an insurer by applying the rule that would be applicable *only if it were one.* Contrary to the rule contended for by defendant we must, on this appeal, in determining whether the judgment shall be reversed or affirmed, construe all ambiguities in the contracts against defendant and in favor of plaintiff. This is true, if for no other reason, than that on a judgment roll appeal it will be presumed that all evidence necessary to support the findings was received. (*Freeman* v. *Gray-Cowan, Inc.* (1933), 219 Cal. 85, 88 [25 P.2d 415].) In accordance with such rule it is to be presumed that evidence was received establishing that the contracts in question, at least insofar as any ambiguous language is concerned, were prepared and formulated by defendant and hence are to be construed against him. (Civ. Code, § 1654; *Payne* v. *Nueval* (1908), 155 Cal. 46, 50 [99 P. 476].) This rule would prevail as to the ambiguous language, under the circumstances shown here, even though it is asserted in plaintiff's brief that "it is plain from the face of each contract in suit that a stock form of contract was used." The admission that a "stock

form of contract" prepared by plaintiff was used, does not, on a judgment roll appeal by defendant, require us to assume in favor of *reversing* the judgment, that any particular clause was formulated by the plaintiff. Obviously, the contract forms were specially filled in to cover the details of the agreement in each case. Such forms, it is entirely possible, and hence, it must be presumed, if necessary to support the judgment, were furnished in blank by plaintiff to defendant and filled in by the latter in respect to the disputed language. In any event, the construction most favorable to sustaining the judgment must be indulged. (2 Cal.Jur. § 511, pp. 871-3; *id.*, § 515, pp. 879-81.) It is also a rule of construction that a contract "must receive such an interpretation as will make it lawful . . . if it can be done without violating the intention of the parties" (Civ. Code, § 1643), and "may be explained by reference to the circumstances under which it was made, and the matter to which it relates" (Civ. Code, § 1647). Bearing in mind such rules of interpretation, and the fact that the findings are conclusive on this appeal, we give attention to the language designated by defendant in order to determine whether such language necessarily establishes that, as a matter of law, plaintiff was engaging in business as an insurer within the meaning of the Insurance Code (or the laws which such code superseded). If such language does not necessarily require the conclusion that plaintiff was operating as an insurer within the contemplation of those laws then the judgment of the trial court must be upheld.

In relation to Contract No. 136, defendant selects the following language as stating the "insuring clauses" of that contract: "Contractor [plaintiff] agrees . . . (c) to insure said motor vehicle for Owner in an authorized insurance company selected by Contractor as follows:

"Public liability—$50/100,000.

"Property damage—$5000.

"Fire and theft—80% of book value.

"Collision—As under.

"Twenty-five dollars ($25.00) deductible."

Defendant further contends that the words "Collision—As under" should not be construed (as impliedly they were by the trial court) to relate to the clause "in an authorized insurance company" and to refer merely to the words immediately thereunder, "Twenty-five dollars ($25.00) deductible," but should be understood *not* to be governed by

the covenant "to insure . . . in an authorized insurance company" and, furthermore, should be deemed to be controllingly related to the third paragraph of specifications of conditions under the general statement "Risk covered by Contractor upon the following conditions." The conditions so specified are as follows:

"That the Owner agrees to discharge any driver who causes Contractor's insurance company to pay claims in excess of $100.00 per year, or who shall have more than four accidents in one year upon which the driver is at fault.

"The Owner further agrees to give Contractor, or its duly authorized agent, a special power of attorney under which Contractor or said agent shall be authorized to settle by compromise, or otherwise, all insurance claims which Owner may have arising out of any of the insurance listed above.

"The Contractor agrees to make good any damage done to Owner's motor vehicle caused by collision, except the first $25.00 of each claim, which shall be paid by the Owner. In this behalf, however, it is understood and agreed that in all cases Contractor shall have the option to repair any motor vehicle which may be damaged from any cause, or to pay to Owner the value of said motor vehicle, to the extent of its book value at the time of damage."

 Defendant urges that the provisions of the agreement whereby the contractor agreed, in one paragraph, "to insure said motor vehicle for Owner in an authorized insurance company" covering public liability, property damage, and, upon one view of the language, collision, and, in another paragraph, agreed "to make good any damage done to Owner's motor vehicle caused by collision, except the first $25.00 of each claim, which shall be paid by the Owner" and retained "in all cases . . . the option to repair any motor vehicle which may be damaged from any cause, or to pay to Owner the value of said motor vehicle to the extent of its book value . at the time of damage," must be construed as constituting an insurance contract by plaintiff. But assuming that such provisions of the contract, whether considered apart from their context or otherwise, do admit of the construction claimed by defendant it is obvious that they also may admit, at least in the light of their context and of extraneous evidence, of the interpretation given them by the trial court. The character of a contract is not to be determined by isolating any single clause or group of clauses; rather, "The whole of a contract

is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other.'' (Civ. Code, § 1641.) The agreement by plaintiff ''to insure said motor vehicle for Owner in an authorized insurance company selected by Contractor as follows,'' etc., is not on its face an unlawful undertaking as an incident of the maintenance contract; it at least admits of an interpretation inconsistent with the theory of defendant that plaintiff himself was to act as the insurer. Likewise inconsistent with defendant's theory that plaintiff undertook to itself act as the insurer is the provision in each contract that ''The liability of Contractor for damage or destruction of said motor vehicle is confined to such damage or destruction as is due to a breach by Contractor of any of its express obligations herein contained.''

In construing the contracts in question it must be borne in mind that nearly every business venture entails some assumption of risk, some element of gambling. The retail merchant when he purchases his stock assumes the risk of lower prices, of receding demand, of spoilage or deterioration of perishable goods; he gambles on his ability to dispose of the stock before it loses value or, perhaps, to hold it until there is an increment of value. The lawyer who contracts to prosecute a case to final judgment for a fixed or contingent fee assumes the risk of long litigation, of repeated trials and reversals. The lessee who agrees to hold his lessor harmless for damage to property of, or injury to, third persons occurring on the leased premises; the lessor who agrees to keep the premises in repair; even the surety on a note, assume a risk and indemnify another against loss. If the defense in this action is to prevail it is but another step to assert that same defense in actions arising out of any of the risk-indemnification agreements mentioned. We are satisfied that a sound jurisprudence does not suggest the extension, by judicial construction, of the insurance laws to govern every contract involving an assumption of risk or indemnification of loss; that when the question arises each contract must be tested by its own terms as they are written, as they are understood by the parties, and as they are applied under the particular circumstances involved.

The opinion in *Jordan* v. *Group Health Assn.* (1939), 107 F.2d 239, 245, and that in *California Physicians' Service* v. *Garrison* (1946), 28 Cal.2d 790 [172 P.2d 4], make it clear

that the element of assumption of risk or indemnification of loss is not controlling. As stated in the Jordan case (p. 247 of 107 F.2d), ''That an incidental element of risk distribution or assumption may be present should not outweigh all other factors. If attention is focused only on that feature, the line between insurance or indemnity and other types of legal arrangement and economic function becomes faint, if not extinct. This is especially true when the contract is for the sale of goods or services on contingency. But obviously it was not the purpose of the insurance statutes to regulate all arrangements for assumption or distribution of risk. That view would cause them to engulf practically all contracts, particularly conditional sales and contingent service agreements. The fallacy is in looking only at the risk element, to the exclusion of all others present or their subordination to it. The question turns, not on whether risk is involved or assumed, but on whether that or something else to which it is related in the particular plan is its principal object and purpose.'' In the California Physicians' Service case it is held that (p. 809) ''Absence or presence of assumption of risk or peril is not the sole test to be applied in determining . . . status. The question, more broadly, is whether, looking at the plan of operation as a whole, 'service' rather than 'indemnity' is its principal object and purpose.''

Here we have none of the evidence which was before the trial court; we do have the contracts as pleaded and the legal effect and interpretation thereof as found by the trial court. The covenant clauses of the contracts, stating the obligations of the plaintiff, are eloquent evidence that the controlling object of each contract is service, not insurance. Contract No. 136 shows the following:

''Guaranteed Maintenance Contract

''This Agreement . . . Witnesseth:

''Contractor agrees to maintain that certain International motor vehicle, Model 103, . . . for 40,000 miles from the date hereof as follows:

''1. At Contractor's sole cost (Standing Charges):

''(a) To furnish garage space for said motor vehicle.

''(b) To furnish state and city license fees for said motor vehicle. . . .

''(c) To insure said motor vehicle for Owner in an authorized insurance company selected by Contractor as follows:

"Public liability—$50/100,000.

"Property damage—$5000.

"Fire and theft—80% of book value.

"Collision—As under.

"Twenty-five dollars ($25.00) deductible.

"Risk covered by Contractor upon the following conditions:

"That the Owner agrees to discharge any driver who causes Contractor's insurance company to pay claims in excess of $100.00 per year, or who shall have more than four accidents in one year upon which the driver is at fault.

"The Owner further agrees to give Contractor, or its duly authorized agent, a special power of attorney under which Contractor or said agent shall be authorized to settle by compromise, or otherwise, all insurance claims which owner may have arising out of any of the insurance listed above.

"The Contractor agrees to make good any damage done to Owner's motor vehicle caused by collision, except the first $25.00 of each claim, which shall be paid by the Owner. In this behalf, however, it is understood and agreed that in all cases Contractor shall have the option to repair any motor vehicle which may be damaged from any cause, or to pay to Owner the value of said motor vehicle, to the extent of its book value at the time of damage.

"(d) To wash said motor vehicle once each calendar month.

"(e) To paint said motor vehicle once each year.

"(f) To recondition signs on said motor vehicle—.

"2. Contractor further agrees to furnish at its sole cost (running charges):

"(a) GAS—All, regardless of price, quantity, or location of truck.

"(b) OIL—All, regardless of price, quantity, or location of truck.

"(c) GREASE—All, regardless of price, quantity or location of truck.

"(d) TIRES—All, regardless of price, quantity or location of truck, and the repairs thereof.

"(e) MECHANICAL REPAIRS—All, regardless of price, quantity, or location of truck, necessary to keep and maintain the chassis in good order, serviceable and roadworthy condition.

"(f) BODY REPAIRS—All, regardless of price, quantity or location of truck, necessary to maintain the body in good order, serviceable and roadworthy condition.

"(g) BATTERY, ELECTRICAL EQUIPMENT AND ACCESSORIES—All, regardless of price, quantity, or location of truck, necessary to maintain said equipment in good order, serviceable and roadworthy condition.

"3. (a) To supply Owner with said motor vehicle, or a substitute therefor, 365 days of each year of the term of this contract; provided, however, that said motor vehicle shall remain in Contractor's garage for such period as may be necessary to enable Contractor to render services to the same as herein set forth, and Contractor shall not be obligated to furnish a substitute therefor during such period. However, if Contractor should require said motor vehicle for a longer period than eight successive hours, then Contractor agrees to furnish a substitute for such longer period.

"(b) To allow Owner at the termination of this contract the sum of $100.00 in trade on a new motor vehicle if Owner so desires.

"(c) To render to Owner, free of charge, reasonable service and advice of Contractor's transportation engineers in the selection of chassis and body equipment, routing of deliveries, and such other problems pertaining to transportation as may arise.

"(d) It is agreed that the Contractor has no jurisdiction over the Owner's driver but Owner agrees to instruct his driver and all other agents to observe the Contractor's reasonable rules and regulations at all times. The Owner further agrees to discharge any driver who so handles his vehicle as to cause the Contractor unnecessary expense.

"4. The Owner agrees:

"(a) To accept said motor vehicle in its then condition at the termination of this contract.

"(b) To pay Contractor for the services set forth in the 1st subdivision of this contract the sum of $55.25 per month.

"(c) To pay Contractor for the services set forth in the 2nd subdivision of this contract the sum of 14 cents for each mile said motor vehicle shall travel. . . .

"5. Owner further agrees that as the *major part of Contractor's service is the supplying of labor,* the Contractor shall have a mechanic's lien upon said motor vehicle and that the Contractor may hold said motor vehicle at any time during the life of this contract for any moneys due. It is further understood and agreed that such lien shall not be dependent

upon the possession of said motor vehicle by Contractor. . . . [Italics added.]

"7. It is further understood and agreed . . . (c) The liability of Contractor for damage or destruction of said motor vehicle is confined to such damage or destruction as is due to a breach by Contractor of any of. its express obligations herein contained. . . ."

The above quoted provisions of the contract, on careful consideration, seem to amply support the conclusion that, as stated in the contract itself, "the major part of Contractor's service is the supplying of labor."

Defendant calls our attention to the finding that "plaintiff is not and at no time covered by either of said contracts has been, qualified as an insurance company . . . to transact an insurance business . . . and . . . plaintiff did not at any time insure the motor vehicles, or either of them . . . against collision in or with any third party whether an authorized insurance company or otherwise." This finding is, under the circumstances shown, wholly immaterial. As to the first clause of the finding, plaintiff does not claim to be entitled to recover as a licensed insurer. As to the second clause of the finding, the fact that plaintiff failed to cause the motor vehicles to be covered by collision insurance establishes at most an immaterial (on this record) breach of its contract. There is no showing that defendant was in any wise damaged by plaintiff's failure to take out such insurance. If either truck had been damaged by collision then the liability of the plaintiff in that respect apparently would have been limited by the agreement that "The liability of Contractor for damage or destruction of said motor vehicle is confined to such damage or destruction as is due to a breach by Contractor of any of its express obligations herein contained." In view of plaintiff's express undertaking to keep the trucks in repair and operating for a stated number of miles of use, and to "make good any damage . . . caused by collision," together with its express agreement to "insure . . . [each vehicle] for Owner in an authorized insurance company," it seems probable that the breach of its obligation to maintain collision insurance would, in the event of damage by collision even though such collision was not caused by any breach of plaintiff's express obligation to maintain the vehicle in good operating condition, make plaintiff liable for the loss (without recourse insofar as insurance carried by it is concerned) but

such liability would not transmute its truck maintenance business into an insurance business. Whether plaintiff's liability in such an event would be solely for damages for breach of its contract to procure and maintain collision insurance, or would arise from its obligation to "maintain" the truck, make all "necessary" repairs, and "make good any damage . . . caused by collision," notwithstanding the limiting clause above quoted, we think it unnecessary and improper for us to undertake to determine on this record. Even if we assume (we do not so decide) that plaintiff's obligation to make repairs was unlimited for the span of miles stipulated, except by the alternative to pay the owner the "book value" of his truck, that obligation would not necessarily void the contract. The making of all repairs by plaintiff—its obligation and right to make them—would be entirely compatible with the carrying of insurance with an authorized carrier to cover the cost of such repairs when the same were necessitated by some casualty such as collision or fire or flood. The making of such repairs, when covered by insurance, might well be a source of profit to plaintiff. Plaintiff's obligations (with their reciprocal contractual rights) to make repairs, to maintain the truck in good running order, and to keep a truck constantly available to the owner except for reasonable service periods, do not in our opinion, make the plaintiff an insurer. Such obligations are similar to those ordinarily undertaken by a lessor of motor vehicles and, unless we are prepared to hold that any lessor of such vehicles, entering into such a contract, is in the insurance business, then we should not hold that plaintiff is, on that account, in such business. Surely the failure of a lessor of motor vehicles to carry collision insurance with an authorized insurer would not change the character of his business from automobile rental to insurance carrier.

Defendant argues, in effect, that even if the International truck contract (No. 136) be construed as not a contract of insurance, the Kleiber contract (No. 145) should be held to constitute insurance. He relies upon a certain slight difference in language in subdivision (c) of paragraph 1. The Kleiber contract, in this respect, reads as follows: "Contractor agrees . . . [1. (c)] To insure said motor vehicle for Owner in an authorized insurance company selected by Contractor as follows:

"Public liability—50/100,000.

"Property damage—We carry.

"Fire and theft—Maximum allowed by our Insurance Company.

"Collision—As under.

"Twenty-five dollars ($25.00) deductible."

The words "We carry" following the subject "Property damage" differ from the International truck contract provision which specified "$5000." Defendant argues that "We carry" should be construed to mean that plaintiff thereby undertakes to carry such risk as the insurer. Plaintiff, on the other hand, asserts that such words in that contract (executed nearly two years after the International truck contract) merely mean that plaintiff was already carrying a blanket property damage insurance contract with an authorized insurance writer and agreed to continue such coverage at its own expense. We think it is obvious that plaintiff's position must be sustained. As previously mentioned, the evidence is not before us. The trial court found, as to each truck, that "plaintiff agreed . . . to cause the same to be insured" and also specifically found "That it is not true that in and by either said contract 136 or said contract 145 or otherwise or at all, plaintiff agreed to carry *as an insurer* any collision or other insurance on either of said motor vehicles. . . ." (Italics added.)

The last quoted finding, irrespective of other considerations, appears to be determinative of this appeal. In an effort to avoid its effect defendant argues that "The fact that the respondent [plaintiff] never insured either truck against collision with any third party whether an authorized insurance company or otherwise is persuasive evidence that the respondent itself intended to carry the collision insurance." This argument as to "persuasive evidence" might have merit in the trial court but it cannot, on a judgment roll appeal, overcome a finding of fact or the construction of a contract presumptively supported by extraneous evidence. In accord with the rule previously noted we are bound to presume that competent evidence sufficient to support all findings was received without objection. (2 Cal.Jur. § 508, p. 867; id., § 514, p. 877; see, also, *Freeman v. Gray-Cowan, Inc.* (1933), *supra*, 219 Cal. 85, 88.) While the last quoted finding is of a conclusional fact which under certain circumstances might depend on a conclusion of law, it cannot be held to involve merely a question of law here. It is firmly established that "the appellate court will accept or adhere to

the interpretation [of a writing] adopted by the trial court—and not substitute another of its own— . . . (2) where parol evidence was introduced in aid of its interpretation, and such evidence . . . is not before the appellate court.'' (4 Cal.Jur. 10-Yr.Supp. (1943 rev.) § 192, p. 146, and cases cited; see, also, 2 Cal.Jur. § 549, pp. 934-939; *Estate of Rule* (1944), 25 Cal.2d 1, 11 [152 P.2d 1003, 155 A.L.R. 1319].) It is entirely unnecessary to determine what construction we might place on the contracts measured solely by their own terms in the absence of explanatory evidence. There could, of course, be evidence which would support the findings as made. We are bound to presume, as stated above, that competent evidence to that end was produced.

The judgment is affirmed.

Shenk, J. Carter, J., Ward, J. pro tem., and Peters, J. pro tem., concurred.

EDMONDS, J.—I do not agree with the conclusion that this court is bound by the findings of fact in regard to the nature and effect of the contracts in controversy. The language of the written agreements is susceptible only of a construction that they provide for insurance and it compels a finding accordingly. In clear and express terms the respondent corporation assumed the obligations of an insurer, obligations which may not be varied by parol evidence. Under these circumstances, the presumption which, upon a judgment roll appeal, ordinarily would stand in the place of substantial evidence to support the findings, may not be applied.

The statement in both contracts, ''Collision—As under. Twenty-five dollars ($25.00) deductible,'' clearly refers to the following provision of the same section which reads: ''The Contractor agrees to make good any damage done to Owner's motor vehicle caused by collision, except the first $25.00 of each claim, which shall be paid by the Owner. In this behalf, however, it is understood and agreed that in all cases Contractor shall have the option to repair any motor vehicle which may be damaged from any cause, or to pay to Owner the value of said motor vehicle, to the extent of its book value at the time of damage.'' This was a specific promise by the corporation to pay for damages caused by collision and it is not affected by the contractor's promise to insure the vehicles in an authorized insurance company for liability in other particulars.

The majority opinion concedes that "in view of plaintiff's express undertaking to keep the trucks in repair and operating for a stated number of miles of use, and to 'make good any damage . . . cause by collision,' together with its express agreement to 'insure . . . [each vehicle] for Owner in an authorized insurance company,' it seems probable that the breach of its obligation to maintain collision insurance would, in the event of damage by collision even though such collision was not caused by any breach of plaintiff's express obligation to maintain the vehicle in good operating condition, make plaintiff liable for the loss (without recourse insofar as insurance carried by it is concerned). . . ." Other provisions of the contract are even more explicit. For example, the contractor expressly agreed to furnish, at its sole cost and regardless of the cause of loss, all mechanical and body repairs, tires, batteries, electrical equipment and accessories. Such an obligation goes far beyond the terms of a service contract (See, *California Physicians' Service* v. *Garrison,* 28 Cal.2d 790 [172 P.2d 4]); it is an unequivocal agreement to indemnify the owner against all hazards, regardless of cause, incident to the ownership, maintenance, operation and use of the automobile. These provisions bring the contracts within the meaning of section 116 of the Insurance Code.

This conclusion is in accord with the weight of authority. Thus in *National Auto. Service Corp.* v. *State* (Tex.Civ. App.), 55 S.W.2d 209, where an association obligated itself in consideration of certain yearly dues to pay for any damage within a stated amount to the owner's vehicle, the court held that the agreement constituted an insurance contract. An Ohio court reached the same result. In that state the contractor agreed to indemnify the owner of automobile tires against all road hazards, including damage from blow-outs, cuts and bruises, caused by defects or by collisions, whether resulting from the negligence of the owner or another. In holding the contract one of insurance, the court said: "The ultimate force and effect of the contract of indemnity embraced in this guarantee may be appreciated if extended to cover not only the automobile tire but the automobile itself. Surely no one would contend that an undertaking by an automobile manufacturer to replace an automobile damaged or destroyed . . . within a specified period after its purchase is not a contract to reimburse one if he suffers loss from a specified cause or to indemnify him against such loss." (*State*

v. *Western Auto Supply Co.*, 134 Ohio St. 163 [16 N.E.2d 256, 259].)

In considering contracts concerning damage to plate glass, the New York courts have held that where the contractor agreed, for a stipulated consideration, to replace store windows, regardless of the cause of breakage, he was carrying on an insurance business. (*People* v. *Roschli*, 275 N.Y. 26 [9 N.E.2d 763] ; *People* v. *Standard Plate Glass & Salvage Co.*, 174 App.Div. 501 [156 N.Y.S. 1012] ; contra: *Moresh* v. *O'Regan*, 120 N.J.Eq. 534 [187 A. 619], rev. on other grounds, 122 N.J.Eq. 388 [192 A. 831, 194 A. 156].) And in *Ollendorff Watch Co.* v. *Pink*, 279 N.Y. 32 [17 N.E.2d 676], the court expressly approved the Roschli case, *supra,* holding that a contract of a watchmaker agreeing with the purchaser of a watch to replace the watch if lost within one year was a contract of insurance.

Whether a contract is severable or entire is a question of interpretation depending upon the intent of the parties. A severable or divisible contract is one in which two or more separate partial performances on each side are agreed to be exchanged. Thus, ordinarily where there is a contemporaneous purchase of several articles at different prices, the contract will be severable as to each of them. And where the price is, by the contract, apportioned to each agreement to be performed, the contract generally will be held to be severable.

An entire contract, on the other hand, is one in which by its terms, nature, and purpose all of the performances or parts, material provisions, and the consideration, are common each to the other and interdependent; under such circumstance, any material breach of one part justifies termination of the entire agreement by the other party. (*Lewis* v. *Shell Oil Co.*, 220 Cal. 80, 83 [29 P.2d 413] ; *Law* v. *San Francisco Gas etc. Co.*, 168 Cal. 112, 116 [142 P. 52, Ann.Cas. 1915D 842] ; *Los Angeles Gas & Elec. Co.* v. *Amalgamated Oil Co.*, 156 Cal. 776, 779 [106 P. 55] ; *Sterling* v. *Gregory*, 149 Cal. 117, 120 [85 P. 305].) And in the case of insurance contracts, although the above general rules are still applied, it has been said ''that the question of severability of the contract . . . depends upon the nature of the risk,—i. e., that where the property is so situated that the risk on one item cannot be affected without affecting the risk on the other

items, the policy must be regarded as entire. . . ." (*Goorberg* v. *Western Assurance Co.*, 150 Cal. 510, 514 [89 P. 130, 119 Am. St.Rep. 246, 11 Ann.Cas. 801, 10 L.R.A.N.S. 876].)

Applying these rules to the facts of the present case it is clear that the contracts are entire. The owner agreed to pay a specified sum for garage space, license fees, washing, painting, and other services, and for the promise of the contractor to "make good any damage done to Owner's motor vehicle caused by collision." The stated sum per mile of use was to pay the contractor for all gas, oil, grease, tires, mechanical repairs, body repairs, and necessary equipment, which was to be furnished at his sole cost. The payment of these amounts, the stated sum and the fixed charge per mile, were not directly apportionable to either the service or indemnity provisions of the contracts. (See: *Perry* v. *Ayers*, 159 Cal. 414 [114 P. 46] ; *Alderson* v. *Houston*, 154 Cal. 1 [96 P. 884].) It is evident that if the contractor refused to pay for or to repair the damage to the owner's vehicle caused by collision, its failure to do so would amount to a material breach of the entire agreement, for the property is not so situated that the corporation's obligation in one particular may be repudiated without affecting the requirements as to other items.

For these reasons, in my opinion, the judgment should be reversed.

Gibson, C. J., concurred.

Appellant's petition for a rehearing was denied December 12, 1946. Gibson, C. J., and Edmonds, J., voted for a rehearing.