[Civ. No. 3529. Fourth Dist. Jan. 27, 1947.]

Adoption of BABY BOY McDONNELL, a Minor. LORRAINE ANGELINE PETERS McDONNELL, Appellant, v. JOHN WILLIAM HOLT et al., Respondents.

[Civ. No. 3530. Fourth Dist. Jan. 27, 1947.]

Guardianship of the Person and Estate of BABY BOY McDONNELL, a Minor. LORRAINE ANGELINE PETERS McDONNELL, Appellant, v. JOHN WILLIAM HOLT et al., Respondents.

Siemon, Maas & Siemon, Alfred Siemon, Walter L. Maas, Jr., and Bennett Siemon for Appellant.

Robert W. Kenny, Attorney General, Clarence A. Linn, Assistant Attorney General, and Philip Adams as Amici Curiae on behalf of Appellant.

Dorris, Fleharty & Phillips for Respondents.

MARKS, J.—Two appeals are presented in this case. One is from a decree of adoption of Baby Boy McDonnell by John William Holt and Edith Wilma Holt. The other is from an order appointing Mr. and Mrs. Holt guardians of the person and estate of Baby Boy McDonnell, a minor.

It should be noted that the petition for the appointment of guardians did not allege that the minor was possessed of any estate. It only sought the appointment of guardians of his person. Further, the petition was filed on August 25, 1945, and the hearing was set for the following September 4th. The order setting the matter for hearing contained the following:

"That notice be given to James Joseph Anthony McDonnell, Tierra Honda a Puente 61, Caracas, Venezuela, and to Lorraine Angeline McDonnell, address unknown, c/o T. H. Werdel, Haberfelde Bldg., Bakersfield, California, at least 5 days before said hearing." Mrs. McDonnell appeared and contested the petition. There is nothing in the record indicating that Mr. McDonnell or T. H. Werdel were ever served with any notice of the hearing. Mr. McDonnell was not present at the hearing, did not appear and was not represented by counsel.

Mr. Werdel was the attorney at law who represented Mrs. McDonnell in the earlier stages of the proceedings involved here, but was not the attorney for Mr. McDonnell. It appears from an uncontradicted affidavit of Mr. Werdel that Mr. McDonnell was very antagonistic to him and his associates. This antagonism resulted in Mrs. McDonnell dispensing with the services of these attorneys on September 4, 1945, before any of the matters involved here had come to trial.

There were three matters heard together at the trial commencing on December 17, 1945. Besides the petition for adoption and the petition for the appointment of guardians, there was a petition for a writ of habeas corpus brought by Mrs. McDonnell to regain the custody of Baby Boy McDonnell.

At the commencement of the trial it seemed to be the understanding of the court and counsel that while the petition for adoption should be considered primarily, all three matters would be heard together and all material evidence considered in the three cases. This resulted in some confusion during the trial. Some evidence admissible in one matter was clearly inadmissible in another. The trial judge overruled practically all of the objections and denied practically all motions to strike evidence made by counsel for Mrs. McDonnell. Much secondary, hearsay and incompetent evidence is found in the record. From the view we take of the cases we need not pursue these matters further although counsel devote space to them in their briefs.

We will first consider the appeal from the order of adoption.

Baby Boy McDonnell was born in Bakersfield on May 10, 1945. He was the legitimate son of Mr. and Mrs. McDonnell. Mr. McDonnell announced, both before and after the birth of the baby, that they did not want the baby as it would interfere with his employment in a foreign country and with necessary travel; that the baby would never be taken from

the maternity home by them; that it should be put out for adoption. Mrs. McDonnell concurred in these statements.

Mrs. McDonnell returned from the maternity home to the couple's residence in Taft about a week after the birth of the boy where she and her husband remained for a short time before leaving for San Francisco. Mrs. McDonnell remained there for a time, living with her mother-in-law, and Mr. McDonnell left for his employment in Venezuela.

The petition for adoption was filed by Mr. and Mrs. Holt on May 11, 1945, when Baby Boy was one day old. Some kind of a document was signed by Mr. and Mrs. McDonnell in the presence of a Mrs. Schultz, an employee of the Department of Social Welfare, about May 28, 1945. This instrument is not before us and the description of it is most vague and unsatisfactory. We cannot determine its exact nature from anything in the record. No reasonable excuse was given by counsel for Mr. and Mrs. Holt for their failure to produce the instrument or a certified copy of it which they claim and the evidence suggests was a consent to the adoption. Of course the evidence as to what the instrument contained was an attempt to prove the contents of a written instrument by parol.

The attorney general has filed a brief as amicus curiae on behalf of appellant at the request of the State Department of Social Welfare. Attached to this brief is a blank consent to adoption in the form prescribed by the Department of Social Welfare which contained the following: "In signing this consent I understand that it does not become final until it has been accepted by the State Department of Social Welfare after ascertaining that the best interests of the child will be promoted by the proposed adoption." He states that this form was signed by Mr. and Mrs. McDonnell and that it consented to the adoption of their son by Mr. and Mrs. Holt. He also states that the word "Void" in vivid red ink was written across the face of this consent and that it is in the files of the Department of Social Welfare. ▮ For the purpose of this opinion we will assume these facts to be true as we can take judicial notice of the official files of a state department, though in this case there seems to be no good reason why we should not have been informed of the contents by certified copies in the record.

The attorney general also points out that the Department of Social Welfare has prepared and published a manual of adoption policies and procedures from which, among other things,

he quotes the following: ''The natural mother of an illegitimate child and either natural parent or both of a legitimate child may withdraw their consent to the adoption of their child at any time before the actual issuance of the order of adoption by the court.''

On August 23, 1945, the Department of Social Welfare filed its report recommending that the adoption of Baby Boy McDonnell by Mr. and Mrs. Holt ''be denied without prejudice to the petitioners.'' Attached to this report is a copy of a letter dated August 11, 1945, written by Mrs. McDonnell to Mrs. Schultz. Mrs. McDonnell had evidently employed an investigator to locate Baby Boy and report to her on the conditions under which he was living. The letter reflects the state of mind of a worried mother who regretted the necessity of her former act and was greatly interested in and anxious about the welfare of her child.

Also attached to the report is a letter dated, Caracas, Venezuela, August 14, 1945, from Mr. McDonnell to Mrs. Schultz from which we quote the following:

''This letter is in reference to the transaction that was begun on May 27th, 1945, in Bakersfield, California, in your car.

''This is to advise you that our personal affairs at that time were in a complete state of saturation, with coming to South American and all that it entailed, and after due consideration on the part of both of us we felt the deal with you would solve the problem.

''Now that things have taken one of those complete reverses and instead of living in the primitive state we are nicely settled here in Caracas, lovely home, servants and all to go with it. We have found out that the tranaction with you was one of those horrible errors of judgment, people make once in a lifetime and sometimes pay the rest of their natural lives for.''

The Department of Social Welfare also filed supplemental reports dated August 27, October 17, 1945, and a further report dated November 23, 1945. These transmitted a telegram, letters, and two formal refusals to give consent to the adoption, each signed by one or the other parent of the boy. The Department of Social Welfare did not change its original position that the petition for adoption should be denied.

█ The adoption of children was unknown to the common law and found its origin in the civil law from which source it has found its way into the statutes of this state. █ To

810

effect a legal adoption these statutes must be exactly followed. ▮ Consent of both parents of a legitimate child is made a prime requisite in our adoption statutes, found in sections 221, et seq., of the Civil Code. (*In re Cozza,* 163 Cal. 514 [126 P. 161, Ann.Cas. 1914A 214] ; *Estate of Sharon,* 179 Cal. 447 [177 P. 283] ; *In re McGrew,* 183 Cal. 177 [190 P. 804].)

Section 224 of the Civil Code provides that "a legitimate child cannot be adopted without the consent of its parents if living," subject to exceptions not important here.

Section 226 of the same code specifies the procedure in adoption cases. It is provided that in all cases where consent is necessary, of which this is one, the natural parents must sign a consent to the adoption in the presence of an agent of the Department of Social Welfare on a form prescribed by it, which consent must be filed with the clerk of the superior court in the county of the residence of petitioners; that the Department of Social Welfare must, within 180 days, or such longer time as may be allowed by the court, make a full report to the court of the facts disclosed by its inquiry, together with "a recommendation regarding the granting of the petition" for adoption. The last paragraph of the section provides for an appeal to the court by either the petitioners or the parents from a failure or refusal of the Department of Social Welfare to accept the consent of the parents or to consent to the adoption. The Department of Social Welfare within ten days is required to file a report of its findings and the reasons for its failure or refusal to consent to the adoption or to accept the consent of the natural parents; that "If for a period of 180 days from the date of filing the petition, or upon the expiration of any extension of said period granted by the court, the Department of Social Welfare fails or refuses to accept the consent of the natural parent or parents to the adoption, or if said department fails or refuses to file or to give its consent to an adoption in those cases where its consent is required by this chapter, either the natural parent or parents or the petitioner may appeal from such failure or refusal to the superior court of the county in which the petition is filed, in which event the clerk shall immediately notify the Department of Social Welfare of such appeal and the department shall within 10 days file a report of its findings and the reasons for its failure or refusal to consent to the adoption or to accept the consent of the natural parent. After the filing of said findings, the court may, if it deems that the welfare of the child

will be promoted by said adoption, allow the signing of the consent by the natural parent or parents in open court, or if the appeal be from the refusal of said department to consent thereto, grant the petition without such consent.'' If such an appeal was taken in this case, no consent was signed by the parents in open court or otherwise other than the one we have assumed was signed on May 28, 1945.

In this connection it is argued by counsel for petitioners that the pleadings admit that a consent was signed by the parents on May 28, 1945, so no further proof on that question was necessary and, further, that Mrs. McDonnell testified that she and her husband signed such consent before Mrs. Schultz on that date. It may be that the answer of Mrs. McDonnell admits the signing of the consent but there was no pleading filed by or on behalf of her husband so her admissions cannot bind him. Both parents, if living, must sign the consent.

Mrs. McDonnell did testify that she and her husband signed some paper having to do with the adoption before Mrs. Schultz on or about May 28, 1945. She was very indefinite about the contents of the instrument and did not know its terms.

The copy of the consent produced by the attorney general specifically provides that ''it does not become final until it has been accepted by the State Department of Social Welfare,'' which makes the consent conditional and not final. Further, the rules promulgated by the Department of Social Welfare specifically provide for the withdrawal of consent by either or both natural parents of a legitimate child at any time before the issuance of the actual order of adoption by the court hearing the proceeding.

We have been cited to no California case dealing with the right of natural parents of a legitimate child to withdraw the consent to adoption before a decree of adoption has been rendered, such consent having once been given. The question seems to be one of first impression here. The courts of sister states are not in accord on it.

The right of adoption being strictly statutory, the weight to be given here to the decisions in other jurisdictions depends not so much on the logic to be found in the decisions as upon the particular statutory provisions being construed. For this and other reasons we will not consider in detail the various cases relied upon by counsel. We will merely cite them.

Counsel for the parents and the attorney general cite the following: *In re Nelms,* 153 Wash. 242 [279 P. 748]; *French*

v. *Catholic Community League,* 69 Ohio App. 442 [44 N.E.2d 113] ; *In re White's Adoption,* 300 Mich. 378 [1 N.W.2d 579; 138 A.L.R. 1034] ; *In re Anonymous,* 178 Misc. 142 [33 N.Y.S. 2d 793] ; 2 C.J.S. 386.

Counsel for Mr. and Mrs. Holt cite the following: *Lane* v. *Pippin,* 110 W.Va. 357 [158 S.E. 673] ; *Wyness* v. *Crowley,* 292 Mass. 461 [198 N.E. 758] ; *Lee* v. *Thomas,* 297 Ky. 858 [181 S.W.2d 457] ; *In re Adoption of a Minor,* 144 F.2d 644; Annotations, 156 A.L.R. 1001, and 138 A.L.R. 1034.

We think it must be concluded from the adoption statutes of this state that natural parents have the right to withdraw a consent to adoption at any time before the rendition of the decree of adoption. The statute delegates to the Department of Social Welfare the power to prepare the form of the consent and that form as adopted shows that the consent is conditional and not absolute. This is further fortified by the rules promulgated by that department. The Department of Social Welfare is given a period of not less than 180 days in which to investigate and report on a case. It clearly appears that a discretion is vested in that department to either approve or disapprove the adoption and it is indicated that no decree of adoption should be made without the approval or consent of that department or after appeal from its adverse action and then only after the parents had consented to the adoption in open court if no consent by them had been filed with the clerk of the court. As the consent of the parents had been withdrawn and had not been filed with the clerk of the court, and as no consent was signed by them in open court, and as a consent by both parents is a necessary prerequisite to any decree of adoption, the decree in question here cannot stand.

The petitioners are persons of unquestioned moral and social standing and financially able to give Baby Boy the advantages of a very good home with all the necessaries and some of the luxuries of life. We might well conclude this phase of the case with the following quotation from *In re Anonymous, supra:*

"In *Matter of Bistany, supra,* 239 N.Y. at page 24, 145 N.E. at page 72, the late Justice Cardozo disposed of similar arguments as follows: 'Stress has been laid in argument upon the welfare of the child, her prosperity and happiness. We do not dwell upon such considerations, for they are foreign to the issue. We digress merely to state that nothing in this record gives color to a suspicion that the parents are actuated by any sinister design. If the proceeding were habeas corpus,

to determine custody alone, there would be need to consider whether the welfare of the child might be held to be controlling. The petitioner asks for more than custody. They seek to make the child their own.'

"It is conceivable, of course, that granting the adoption might promote the moral and temporal interests of this child. My investigation indicates that petitioners are persons of high standing in their community and have ample financial resources to extend to the child comforts and advantages which otherwise might be denied her. Unfortunately, however, the law does not permit me to give weight to such considerations. The rights of the natural parent are paramount.''

We will now turn to a consideration of the guardianship proceeding. The evidence presents a sharp conflict which ordinarily might lead to an affirmance of the order. However, this is not the ordinary case in which a minor has or will have no fit natural guardian and his custody must be entrusted to some other person.

 The guardianship proceeding before us is so entwined in the record with the adoption that the one should not be decided without due regard to the other. If the petition for adoption is either granted or denied the necessity or convenience of the appointment of guardians of the person of the minor will disappear for he will then have natural guardians ·either in the persons of his natural or his adoptive parents. If Mr. and Mrs. Holt should be appointed guardians of the person of the minor and the petition for adoption should be denied the result could only be confusion and further litigation. Thus it is neither ''necessary or convenient'' to appoint guardians of the person of the minor in a proceeding heard prior to the adoption proceeding. A showing of necessity and convenience is necessary in guardianship proceedings. (Prob. Code, §§ 1405, 1440.)

 Further, as we have already seen, the court never acquired jurisdiction over Mr. McDonnell as no notice of the time and place of the hearing as required by section 1441 of the Probate Code and the order of court was ever served on him. That code section contains the following: ''In all cases notices must be given to the parents of the minor or proof made to the court that their addresses are unknown, or that, for other reason, such notice cannot be given.'' The validity of the court order providing for service on Mr. McDonnell is open to serious question. Service of notice on an attorney

who was a total stranger to the person to be notified cannot be held to be notice to the father of the child. Also, under the facts appearing here, where the person to be notified lives in a foreign country far distant from the city in which the hearing was to be held, service on him only five days before the day set for hearing, if service had been made, cannot be regarded as reasonable.

The decree of adoption, and the order appointing the guardians, are both reversed.

Barnard, P. J., and Griffin, J., concurred.

Petitions for rehearing were denied February 21, 1947, and respondents' petition for a hearing by the Supreme Court was denied March 27, 1947. Schauer, J., voted for a hearing.