[S. F. No. 17453. In Bank. Apr. 1, 1948.]

Adoption of ROBERT JAMES PARKER, a Minor. BERTHA ANDERSON, Appellant, v. VIRGINIA E. PAIGE et al., Respondents.

Schofield & Hanson, Allison E. Schofield and Raymond L. Hanson for Appellant.

Fred N. Howser, Attorney General, and Clarence A. Linn, Assistant Attorney General, as Amici Curiae on behalf of Appellant.

Jesse H. Miller and Joseph F. Leonard for Respondents.

GIBSON, C. J.—After respondents, Mr. and Mrs. E. F. Paige, had instituted this proceeding to adopt Robert James Parker, an illegitimate child, the natural mother, Bertha Anderson (formerly Bertha Parker West) sought to recover custody of the child by a writ of habeas corpus. The two proceedings were consolidated for hearing, the writ was denied, and the petition for adoption was granted. This appeal is taken by the natural mother from the decree of adoption.

When the child was born on September 4, 1940, appellant was separated from her then husband, Thomas J. West, whom she had not seen for more than two years. Appellant testified that her brother's stepson was the father of the child. The Wests had four legitimate children, and appellant was afraid that if her husband found out about Robert the other children might be taken from her. Robert was cared for by relatives until April 1943, when appellant gave him to respondents for adoption. The petition for adoption was filed about six months later, and the State Department of Social Welfare was notified of the proceedings on October 19, 1943.

Appellant signed the following "consent to adoption" in the presence of a representative of the department on April 5, 1944. "I, the undersigned, being the mother of the above named minor child, and entitled to the sole custody of the said child, according to section 226 of the Civil Code, do

hereby give my full and free consent to the adoption of said child by respondents, it being fully understood by me that I am giving up all my right of custody, services and earnings of said child and that said child cannot be reclaimed by me. *In signing this consent I understand that it does not become final until it has been accepted by the State Department of Social Welfare after ascertaining that the best interest of the child will be promoted by the proposed adoption. . . ."* (Italics added.)

Two days after this consent was taken, the department filed a report in the adoption proceeding stating it was "removing the case from its calendar until the legal status of the child and the right of the parents to give consent has been established. As soon as this has been done, the . . . Department . . . will complete the investigation and submit its report to the Court." The word "void" was written across the "consent to adoption" by Mrs. Phillips, the department representative who witnessed appellant's signature to the consent, but the record is not clear that this was done when the foregoing report was filed with the superior court. However, since Mrs. Phillips left the department in July, 1944, it must have been done before that time.

The final report of the department, filed May 10, 1945, stated that because of its inability to obtain the consent of West it refused to consent to the adoption and recommended that the petition be denied without prejudice. When this report was filed appellant joined with respondents in requesting the court to proceed with the adoption without the consent of West. This request was refused by the court apparently because West was the presumptive father and had received no notice of the proceedings.

In October 1945, appellant married her present husband, Anderson, who was the first person to speak to respondents concerning the adoption of the child. After the marriage appellant changed her mind about the child, and in May, 1946, she notified the department that she refused to give her consent to the adoption, and she sought to regain the custody of the child by a writ of habeas corpus. Thereafter West filed his consent to the adoption by such persons as the court might designate.

The order for adoption, in reciting facts found by the court, states that appellant voluntarily appeared at the department and signed a consent to adoption, that she relinquished and

waived all of her rights to the custody of the child, and that her attempt to revoke the written consent was void and of no force or effect. The court also found that respondents had complied with the provisions of the Civil Code with reference to the adoption, that they were fit and proper persons, and that the interest and welfare of the child will be best served by the adoption. It was ordered that the consent signed by appellant be delivered by the department to the clerk of the court for filing.

The question is whether there was a sufficient consent to give the court power to render the adoption decree.

The procedure for the adoption of children was unknown to common law (*Matter of Cozza*, 163 Cal. 514, 522 [126 P. 161, Ann. Cas. 1914A 214]), and we must look to the statutes under which these proceedings were taken to determine whether the consent was sufficient. Section 224 of the Civil Code provides, with certain exceptions not pertinent here, that an illegitimate child cannot be adopted without the consent of its mother if she is living. Section 226 of the Civil Code, which prescribes the procedure to be followed in adoption proceedings like the present one, provided in 1943 that "In all cases in which consent is required . . . the consent for adoption must be signed in the presence of an agent of the . . . Department . . . on a form prescribed by such department and filed with the clerk of the superior court. . . . Such consent, when reciting that the person giving it is entitled to the sole custody of the minor child, shall, when duly acknowledged before such agent, be prima facie evidence of the right of the person making it to the sole custody of the child and such person's sole right to consent."

The section also provided that "it shall be the duty of the Department . . . to ascertain whether the child is a proper subject for adoption and whether the proposed home is suitable for the child, prior to accepting the consent of a natural parent to the adoption of the child by the petitioner."* The department is required to submit to the court a full report of the facts disclosed by its inquiry, with a recommendation

---

*In 1945, section 226 of the Civil Code was amended, and the portion quoted above was changed to read: "shall be the duty of the Department . . . to accept the consent of the natural parents to the adoption of the child by petitioners and to ascertain whether the child is a proper subject for adoption and whether the proposed home is suitable for the child, prior to filing the report with the court." This and other changes made in section 226 in 1945 and 1947 are not directly applicable here because the report was filed before the effective date of the amendments.

regarding the granting of the petition, within 180 days after the filing of the petition. If for a period of 180 days from the date of filing the petition or upon the expiration of any extension of the period granted by the court, the department "fails or refuses to accept the consent of the natural parent or parents to the adoption, or if said department fails or refuses to file or to give its consent to an adoption in those cases where its consent is required by this chapter, either the natural parent or parents or the petitioner may appeal from such failure or refusal to the superior court of the county in which the petition is filed, in which event the clerk shall immediately notify the Department . . . of such appeal and the department shall within 10 days file a report of its findings and reasons for its failure or refusal to consent to the adoption or to accept the consent of the natural parent. After the filing of said findings, the court may, if it deems that the welfare of the child will be promoted by said adoption, allow the signing of the consent by the natural parent or parents in open court, or if the appeal be from the refusal of said department . . . to consent thereto, grant the petition without such consent."

It thus appears, with certain exceptions not material here, that there are only two methods provided by the code for securing parental consent to an adoption: (1) by a consent signed in the presence of an agent of the department on a form prescribed by it, and (2) by a consent signed in open court with permission of the court. In the present case, appellant did not sign a consent in open court, and the question is, therefore, whether under the facts of this case the consent signed in the presence of the department's agent was sufficient to bring the proceeding within the first method provided by statute.

The form of consent prescribed by the department and signed by appellant expressly stated that it should not become final until it was accepted by the department. The language in section 226, as it read in 1943, when considered as a whole plainly indicates that a consent tendered to the department is not operative without the approval of the department. No other construction would give full effect to the provision that if the department "*fails or refuses to accept* the consent of the natural parent or parents to the adoption . . . either the natural parent or parents or the petitioner may *appeal* from such . . . refusal to the superior court.

. . ." (Italics added.) Use of the word "appeal" implies that the department has a discretionary right, at least in the first instance, to refuse to accept a tendered consent. The effect of the statute is that in the event of such a failure or refusal, the parent or petitioner has no right to compel the department to approve the consent, but upon the appeal "the court may, if it deems that the welfare of the child will be promoted by said adoption, allow the signing of the consent . . . in open court."

It follows that, if the department does not accept the parent's consent, it is ineffective, and it then becomes necessary to secure a consent signed in open court. ▮ The parent may not, as a matter of right, be able to revoke a consent after it has been witnessed and approved by the department, and we expressly withhold approval of the statement in *Adoption of McDonnell*, 77 Cal.App.2d 805, 812 [176 P.2d 778], that "natural parents have the right to withdraw a consent to adoption at any time before the rendition of the decree of adoption." We need not determine this question here, since it is apparent that no problem of revocation arises where the department fails to accept a tendered consent because, in such event, there would be no "consent" within the meaning of section 226 unless there was a consent signed in open court.

▮ The existence of discretionary power in the department to approve or reject a consent is also indicated by the earlier form of the appeal provision in section 226 which specified a right to appeal only where the department "refuses to accept the consent . . . *on the ground that the best interests of the child will not be promoted by the proposed adoption.*" (Italics added.) (§ 226 as amended in 1931.) From this language it is obvious that the Legislature contemplated that the department should exercise discretionary powers, and the fact that the right to appeal was subsequently broadened by removing the limitation on that right certainly did not terminate those powers.

This construction is further supported by the provision in section 226, effective from 1931 to the date of the amendment in 1945, making it the duty of the department to ascertain whether the child was a proper subject for adoption and whether the proposed home was suitable "prior to accepting the consent of a natural parent." There would be little purpose to such a provision if the department did not have the

right to refuse to accept the consent on the basis of facts discovered upon its investigation.

 There are numerous reasons for legislation permitting the department, after an investigation, to withhold approval of a tendered consent. One reason is to safeguard against the possibility of duress. Another is to ascertain whether the legal husband of the mother of a child asserted to be illegimate has notice of the proceedings in order to give him an opportunity to contest the claim of illegitimacy and show he is the real father. The department should have discretion to refuse to accept a consent which by statute is made "prima facie evidence of the right of the person making it to the sole custody of the child and such person's sole right to consent" and which may therefore have the effect of rebutting the presumption of legitimacy. This is particularly true where, as here, the department has knowledge that the consenting parent was married when the child was conceived, and no notice has been given the presumptive father.

 The department's manual of procedure shows that it has interpreted the statute as giving it discretion to refuse to take or accept a consent. The manual states that in order to avoid the upsetting effect and the physical and emotional stress resulting from childbirth, the consent of the mother shall not be taken during confinement; that consent is not to be taken unless it is full and free, and if the mother seems to be in doubt, she is to be given further time to decide; and that where there is a presumptive father, his consent or a court order refuting the presumption of legitimacy must be obtained. It is the settled rule, of course, that administrative interpretations such as these will be accorded great respect by the courts and will be followed if not clearly erroneous. (*County of Los Angeles* v. *Frisbie,* 19 Cal.2d 634, 643 [122 P.2d 526]; *Bodinson Mfg. Co.* v. *California E. Com.,* 17 Cal. 2d 321, 325 [109 P.2d 935]; *Los Angeles County* v. *Superior Ct.,* 17 Cal.2d 707, 712 [112 P.2d 10].)

 The mere signing of a consent before an agent of the department together with physical receipt of the paper by the department does not necessarily constitute an acceptance or approval. The code section as it read in 1943 did not so provide, and no good reason has been shown for writing it into the statute even where, as here, some investigation was made by the department before it witnessed the signature of the mother. To the contrary, both the purposes of the statute

and orderly administrative procedure indicate that the department should be permitted to obtain the signature of the mother either before or during the course of its investigation and withhold acceptance until it has had ample time to give proper consideration to the matter. Moreover, the department might be unwilling to conduct a lengthy and expensive investigation upon the mere oral statement of the mother that she is willing to give up her child. To hold that the mere act of receiving a paper signed by the mother is *per se* an approval of the adoption or acceptance of the consent might result in depriving the presumptive father of notice and might in many instances prevent the department from fully carrying out its statutory duty of ascertaining the facts relating to the child, its parents and the proposed home.

In the present case it was made clear to appellant at the time the consent was signed that the department reserved the right to pass upon the matter at a later date. It is undisputed that the form she signed referred to section 226 of the Civil Code and further stated: ''In signing this consent I understand that it does not become final until it has been accepted by the State Department of Social Welfare after ascertaining that the best interest of the child will be promoted by the proposed adoption.'' The use of such a condition is a proper method of informing the mother that the department did not purport to act immediately, particularly in view of the statement in section 226 that the consent is to be signed ''on a form prescribed by such department.'' The evidence established without contradiction that appellant read the statement which she signed. Both she and the department had a right to rely on the fact that the consent was conditional and ineffective without approval by the department. Accordingly, it must be held that the mere signing of the document and delivery to the department under these circumstances is not alone sufficient to establish an acceptance of the consent within the meaning of section 226.

There is no evidence in the record which will support a conclusion that the department accepted the consent, and what evidence there is on the subject is to the effect that there was no approval. After the consent was received, the word ''void'' was written upon it by an agent of the department, and two days after it was signed the department filed a report in court stating that the case was removed from its calendar ''until the legal status of the child and the right of the parents

to give consent has been established." The final report recommended against adoption because of inability to obtain consent of the presumptive father or complete the investigation. On the face of this record it would be completely unrealistic to hold that the department approved the consent.

In the present state of the record there is no basis for the application of the doctrine of estoppel in this case. The code, in order to protect the interests of the child and other persons concerned, permits an adoption only in the manner specified. Resort to estoppel where the statutory requirements are not met would not only defeat the safeguards prescribed by the Legislature but would amount to the creation of a method of adoption—by private agreement of the parties—not recognized at common law or by statute.

It has been suggested that the judgment can be affirmed upon the ground that the child was abandoned by its parents. Section 224 of the Civil Code provides that consent of the parents is not necessary for adoption if they have been judicially deprived of the custody and control of the child by order of the juvenile court. Section 701 et seq. of the Welfare and Institutions Code prescribes the procedure to be followed in obtaining a declaration that a child is free from parental custody and control by reason of abandonment. There is evidence in the record which could be urged in support of an order declaring the child free of appellant's control, thus eliminating the necessity for her consent to adoption, but no such declaration was obtained here, and, therefore, the order of adoption cannot be supported upon the theory of abandonment. Nothing we have said, however, is intended to preclude appropriate proceedings under the foregoing sections.

The judgment is reversed.

Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Spence, J., concurred.

SCHAUER, J.—I dissent. I agree with the statement in the majority opinion that "There is evidence in the record which could be urged in support of an order declaring the child free of appellant's control, thus eliminating the necessity for her consent to adoption," but I disagree with the holding, which is contrary to the finding of the trial court, that the evidence fails to show appellant's consent to the adoption which was adjudicated.

In my view of the facts and the law, one need go no further than the face of the majority opinion to discover facts which fully support the learned and experienced trial judge in the strict legal probity as well as the wisdom and justice of his holding. It is to be noted that the majority opinion italicizes the language ''In signing this consent I understand that it does not become final until it has been accepted by the State Department of Social Welfare after ascertaining that the best interest of the child will be promoted by the proposed adoption. . . .'' Such opinion then proceeds to construe the consent signed by appellant as though the italicized language were necessarily the controlling sentence of the document. This is contrary to the construction given the document by the trial judge; it ignores the directly conflicting language in the preceding sentence, that ''I . . . do hereby give my full and free consent to the adoption of said child . . ., it being fully understood by me that I am giving up all my right of custody, services and earnings of said child and that said child cannot be reclaimed by me.'' The majority opinion likewise ignores the circumstances shown by the evidence, to the effect that the Social Welfare Department, in accord with its established practice, had investigated the case before it took the signed consent of the appellant; it ignores the implied finding of the trial court, made on ample extrinsic evidence, that the department accepted the mother's consent at the time it was signed in the presence of the department's agent.

The action of the majority in construing the consent, upon extrinsic evidence, contrary to the interpretation found by the trial court, is contrary to the well established rule that an ''appellate court will accept or adhere to the interpretation [of a contract] adopted by the trial court—and not substitute another of its own— . . . where parol evidence . . . is such that conflicting inferences may be drawn therefrom.'' (4 Cal. Jur. 10-Yr.Supp. (1943 Rev.) § 192, pp. 146-147; *Estate of Rule* (1944), 25 Cal.2d 1, 11 [152 P.2d 1003, 155 A.L.R. 1319]; *Transportation Guaranty Co.* v. *Jellins* (1946), 29 Cal.2d 242, 255 [174 P.2d 625].)

I think also that in a case such as this, where upon the facts and the law, the choice of this court for an affirmance seems at least as logical as for a reversal, we should hold that the trial judge was eminently correct, and sustain him, in considering the welfare of the child as being paramount in relation both to the belated claim of the appellant and the purely technical contention on behalf of the state administrative agency.

For a more complete, and to me entirely satisfactory, treatment of all points involved, reference is made to the opinion prepared by Mr. Justice Bray for the District Court of Appeal, First Appellate District, Division One, reported at ▌(Cal. App.) 183 P.2d 119.

Respondents' petition for a rehearing was denied April 29, 1948. Schauer, J., voted for a rehearing.