[Civ. No. 4611. Fourth Dist. Feb. 24, 1953.]

In re JAMES KITCHENS, a Minor. STATE DEPART-
MENT OF SOCIAL WELFARE, Appellant, v. JESS
H. THOMPSON et al., Respondents.

Edmund G. Brown, Attorney General, Richard L. Mayers, Deputy Attorney General, Robert M. Wash, County Counsel (Fresno), and John E. Loomis, Assistant County Counsel, for Appellant.

William A. McGugin for Respondents.

GRIFFIN, J.—The sole question here involved is whether the consent of a licensed adoption agency, to which a child has been previously relinquished under section 224m of the Civil Code, is a jurisdictional prerequisite to the granting of a valid adoption order.

James Kitchens, born June 25, 1941, was the legitimate child of Olan B. and Opal Kitchens. The mother became an inmate in a state hospital for the insane and on October 10, 1950, the superintendent certified to the Department of Public Welfare that the mother was not and would not be capable of properly supporting or controlling said child. On November 9, 1950, the father duly executed a relinquishment of the child to said department under section 224m, *supra,* for purposes of adoption. It was duly accepted and filed and a copy forwarded to the State Department of Social Welfare on November 22, 1950.

On August 8, 1951, petitioners Jess H. Thompson and his wife petitioned to adopt the child. Apparently he had been boarded in petitioners' home by the Welfare Department when he was about 16 months of age. About two years ago he was placed in a boys' home at Pomona by the Welfare Department. It filed its refusal to consent to the adoption and filed its report and findings setting forth its reasons, and stated that it had not authorized the filing of the petition for adoption. A hearing was subsequently had before the court concerning the best interests of the child, and upon conflicting but competent and sufficient evidence, the court found that the welfare and interests of the child would be promoted by its adoption by petitioners, and on May 9, 1952, it made its order accordingly. Appellant, State Department of Social Welfare, does not question the sufficiency of the evidence to support the order, but has made it plain that the purpose of this appeal by it is to determine the question of law involved only, since this question has arisen in the past, and since there are other similar proceedings pending in other courts of this state.

Appellant relies upon opinions of the attorney general for

several years last past, in which the Director of the Department of Social Welfare has been given certain advice on related subjects which are in conflict with the trial court's ruling in the instant case. It argues that the uninterrupted. interpretation by the department in the preparation of manuals on that subject should be considered in determining the local question involved. (See, Ops.Cal.Atty.Gen. Vol. 10, p. 253 [No. 47-187, Dec. 8, 1947]; Vol. 11, p. 102 [No. 47-301, Mar. 10, 1948]; and No. 1-NS1600, Apr. 3, 1939; No. 7945, Mar. 2, 1932; No. 1-7524, May 12, 1931; and No. 1-6079, Aug. 23, 1927.) See, also, 3 California Jurisprudence, section 21, page 360; and *Adoption of Parker,* 31 Cal.2d 608 [191 P.2d 420].

It argues that the position taken by the trial court indicates a misapprehension as to the basic distinctions made by the California Adoption Law between "independent" and "agency" adoptions; that an independent adoption, as defined by the Department of Social Welfare (Manual of Adoption, § 2030-00) is one in which the child is placed by the parent, who consents to the adoption by specific individuals; that in an independent adoption the parent makes his or her own selection of adoptive parents and gives the child directly to persons of his or her own choosing and the natural parents retain a legal right to and responsibility for that child until the adoption is completed by court decree; that the child may be free for adoption only by the parents' written consent; that such consent, to be effective, must be signed in the presence of an agent of the State Department or of a licensed county adoption agency; and that the approval of the court is necessary before such a consent may be withdrawn, citing Civil Code, sections 226 and 226a; that after the filing of the petition by the adopting parents and the taking by the Department of Social Welfare of the consent of the natural parents, the department is required by law to ascertain whether the child is a proper subject for adoption and whether the proposed home is suitable for the child; that the department must then file a "report" with the court; that such report is referred to in section 226 of the Civil Code as a "consent," a "recommendation" and "findings"; that the reading of that sentence makes apparent that two different meanings are ascribed to the word "consent"; that the word is employed to indicate the granting by the natural parents of their formal permission to the adoption of their child by specified petitioners; that the word is employed in reference to the action of the department in refusing, after

investigation and the making of findings, to acquiesce, assent, concur, support or approve the act of the natural parents in placing their child in the home of petitioners; that when the department, as a result of the investigation, refuses to approve the proposed independent adoption, the law provides for an ''appeal'' to the superior court; that it may file a report of such findings; that this report is of an advisory nature only and is designed to aid the court in the exercise of its discretion, citing *Adoption of D. S.*, 107 Cal.App.2d 211 [236 P.2d 821]; that the court thereafter may, if it deems the welfare of the child will be promoted, nevertheless allow the signing of the consent of the natural parents in open court and issue a valid adoption decree.

It is then contended that an agency adoption, as defined by the department, is one in which a child is relinquished by its parents to a licensed adoption agency and is placed for adoption by the agency, citing Manual of Adoption, section 2030-00; that in an agency adoption the agency constitutes the authorized intermediary between the natural parents who give their children up for adoption and the adopting parents who receive them; that the agency not only accepts the child physically from the parents but in accepting the relinquishment by the natural parents, assumes the role of parent, with full rights to and responsibilities for the care of the child; that the parents relinquish their child to a licensed adoption agency presumably because they wish to have their child placed in the best possible home, where full use of the facilities, training and experience of a licensed adoption agency is available, and where the agency is regulated and supervised by the State Department of Social Welfare.

The standard joint relinquishment form used by the department reads:

''It is fully understood by me (the natural parent) that when this relinquishment is filed with the State Department of Social Welfare by said agency, all my rights to the custody, service and earnings of said minor child, and any responsibility for the care and support of said minor child will be terminated, and that said child cannot be reclaimed by me.''

It is then pointed out that the relinquishment, once accepted, binds both natural parents and the agency; that it may only be rescinded by the mutual consent of the parties,

citing Civil Code, section 224m; that thereafter, in the roll of acting parent, the agency, rather than the natural parent, must give its consent to the adoption of the child before the court has jurisdiction to award it to the adopting parents.

 Respondents rightfully argue that the procedure for the adoption of children was unknown to common law and that this type of proceeding is prescribed by statute, and accordingly the authority of any agency created by such statute to investigate, recommend, consent to, or refuse to consent to any adoption, as well as the power and jurisdiction granted to the court, is purely statutory and, accordingly, the statute must be strictly followed. They therefore contend that a strict interpretation of the statutes involved grants respondents the right of appeal from the refusal of the department to grant its consent to adoption in any case, and that the trial court is the final arbiter in respect to the granting of consent, even under an agency adoption, and it may exercise its independent judgment in the matter, citing *Adoption of Parker*, 31 Cal.2d 608 [191 P.2d 420]; *In re Santos*, 185 Cal. 127 [195 P. 1055]; *Adoption of D. S., supra*; and *Adoption of Lingol*, 107 Cal.App.2d 457 [237 P.2d 57].

In this connection they contend that under section 221 of the Civil Code "Any minor child may be adopted ·by an adult person, . . . subject to the rules prescribed in this chapter"; that section 224 thereof provides that "A legitimate child cannot be adopted without the consent of the parents if living"; and that certain exceptions are then noted, including the exception: "3. Where such father or mother of any child has relinquished said child for adoption as provided in section 224m of this code; or where such father or mother has relinquished said child for adoption to a licensed or authorized child placing agency . . ."; that accordingly, parental consent is required unless the child has been declared abandoned, been deserted by its parents, or relinquished for adoption as indicated. It is argued that this section provides no basis for differentiation between those cases where parental consent is not required.

Section 226 of the Civil Code provides in part: "Any person desiring to adopt a child may for that purpose petition the superior court. . . . In all cases in which consent is required . . . the consent of the natural parent or parents to the adoption by the petitioners must be signed," etc.; that "In all cases of adoption in which no agency licensed to place children for adoption is a party . . . it shall be the duty

of the Department . . . to accept the consent of the natural parents . . . and to ascertain whether the child is a proper subject for adoption . . . prior to filing report with the court. In all cases in which the consent of the natural parent or parents is not necessary and an agency licensed to place children for adoption is not a party to the petition,'' the agency shall ''file its consent to the adoption with the clerk of the superior court of the county in which the petition is filed. Such consent shall not be given by the Department of Social Welfare or the licensed adoption agency unless the child's welfare will be promoted by the adoption. Except in the case of the adoption of a child by a stepparent . . . it shall be the duty of'' the agency ''to submit to the court a full report of the facts disclosed by the inquiry with a recommendation regarding the granting of the petition. . . . Whenever any report or findings are submitted to the court by the'' agency ''under the provision of this section, a copy of such report or findings, whether favorable or unfavorable, shall be given to the attorney. . . . If the findings of the . . . agency are that the home of the petitioners is not suitable for the child and it recommends that the petition be denied, the county clerk upon receipt of the report . . . shall immediately refer it to the superior court for review. . . . If . . . the . . . agency fails or refuses to accept the consent of the natural parent or parents to the adoption, or if said department or agency fails or refuses to file or to give its consent to an adoption in those cases where its consent is required by this chapter, either the natural parent or parents or the petitioner may appeal from such failure or refusal to the superior court of the county in which the petition is filed.'' Thereafter the agency shall ''file a report of its findings and the reasons for its failure or refusal to consent to the adoption or to accept the consent of the natural parent. After the filing of said findings, the court may, if it deems that the welfare of the child will be promoted by said adoption, allow the signing of the consent of the natural parent or parents in open court, or if the appeal be from the refusal of said department or agency to consent thereto, grant the petition without such consent.''

Respondent argues that this section does not give the agency the authority to consent or refuse to consent to the adoption of a child to the same extent that it gives to parents; that this section gives to the superior court, upon review or appeal from the refusal of the agency to grant its consent in any

case, the right to exercise its independent judgment in the matter, and that the agency cannot thereafter be heard to complain. No California cases have been brought to our attention bearing directly on this question. The cases cited by respondent do not involve the refusal to give a consent by the agency where there has been a relinquishment of the child to that agency by the parents. In the cases cited by appellant on this question that have arisen under statutes which are similar in tenor to ours, the courts have held that when parental rights have been terminated by proper action (that is, through court order or relinquishment) the consent of the custodian of the child is a jurisdictional prerequisite to a valid adoption.

In *Child Saving Institute* v. *Knobel* (1931), 327 Mo. 609 [37 S.W.2d 920, 76 A.L.R. 1068], after the death of its mother, the father gave custody of the child to the institution, with power to it to consent to adoption. The court held that where the adoption decree was issued without notice to the institution the decree was invalid on the ground that there could be no valid adoption decree without the consent of the institution. This case was followed in *State ex rel. St. Louis Children's Aid Soc.* v. *Hughes* (1944), 352 Mo. 384 [177 S.W. 2d 474].

In *Bolling's Adoption* (1948), 83 Ohio App. 1 [82 N.E.2d 135], the natural parents voluntarily executed a permanent surrender of their child to the "Children's Services Agency" pursuant to an Ohio statute that set forth the right of parents by contract to surrender the care, custody and control of their children. The contract authorized the institution, when the agreement was for the permanent care and custody, to appear in any preceeding for the legal adoption of the child, and consent to its adoption. The court held that there was a valid contract and that the agency was the only one authorized to give consent to adoption as long as the contract remained in full force and effect. It further held that such agency is a necessary party to such a proceeding and has the right of appeal.

In *Flora's Adoption* (1935), 152 Ore. 155 [52 P.2d 178], the statute gave the child placement agency involved therein guardianship of dependent and delinquent children and provided that where the agency deems the action desirable it may consent *in loco parentis* to the legal adoption of such wards. The child had been permanently committed to this agency. Later, both natural parents consented to the pro-

posed adoption by the petitioners. The agency objected to the adoption. The court held that the minor could not be adopted because of the refusal of the agency to give its consent. See, also, *Dougherty's Adoption* (1948), 358 Pa. 620 [58 A.2d 77], where it was held that the judge did not possess judicial power to compel the society to grant its consent to the adoption. To the same effect is *In re Whitcomb* (1946), 61 N.Y.S.2d 1.

In *State* v. *District Court* (1946), 119 Mont. 143 [173 P.2d 626], the district court adjudged four children to be dependent and neglected and awarded their custody to the Division of Child Welfare Services. By virtue of this award the department was authorized to appear in any court where adoption proceedings were pending and assent to the adoption of the said children. A petition to adopt two of the children was filed. The Welfare Department appeared and moved the court to dismiss the petition on the ground that the Welfare Department had withheld its consent to the adoption and that the court was without jurisdiction to proceed without such consent. The laws of that state were quite similar to the laws of this state in this respect and the court there said:

". . . when a child is found by a court decree . . . to be dependent and neglected, and their care and custody are awarded to a state agency by the court, such children are as free from parental supervision as when placed in the custody of adopted parents.

". . . The care and custody of the children was entirely in the hands of the Welfare Department and that department alone is responsible to the state and to the law for the proper care of the minors.

"We see no sound reason why the legislature should not repose the same right relative to giving consent to the adoption of children placed in an agency of the state as the parents possess before the custody of the children is taken from them. The Welfare Department is *in loco parentis* to the children involved here. The Welfare Department has no power such as the district court possesses to approve the adoption of a child, but only to grant or withhold consent to the adoption of a minor legally in its custody."

The court there cited *Ex parte Chambers*, 80 Cal. 216 [22 P. 138]. This was a proceeding in habeas corpus. It involved an act of our Legislature of April 1, 1878 [Stats. 1878, chap. DCXXVI p. 963] providing that managers of state orphan asylums "are hereby authorized . . . to consent to the adoption of any orphan child, or child abandoned by its parents,

. . ." The managers of the asylum did not consent to the adoption of the child by the petitioners. The lower court found that petitioners were fit and proper persons to care for the child, and that the welfare of the child would be promoted by adoption by petitioners. Our Supreme Court held that inasmuch as the power to adopt is a creation of statute, there could, in this case, be no valid adoption in the absence of the consent on the part of the asylum managers. The court granted the writ, returning the child to the custody of the asylum.

There is a clear distinction between the authority of a court dealing with a case in which a child has been declared abandoned and free from custody and made a ward of the court pursuant to Welfare and Institutions Code, section 701, and the relinquishment to a licensed adoption agency under Civil Code, section 224m. ▉ A judge of the juvenile court is virtually the guardian of the wards of that court. (*In re Hunter,* 45 Cal.App. 505 [188 P. 63].) The matter of home finding and placement functions are vested exclusively in "adoption agencies" which have been duly licensed by the State Department of Social Welfare. (Welf. & Inst. Code, §§ 950-959.) ▉ A petition to adopt a child who has been abandoned is but an independent adoption proceeding in which a court declaration that the child be freed from the custody and control of his parents serves as a substitute for parental consent. See *Matter of Cozza,* 163 Cal. 514, in which it is said, at page 523 [126 P. 161, Ann.Cas. 1914A 214]:

"Nor is discretion committed under adoption proceedings to the superior court to make an order therefor, if it deems that the interest of the child will be promoted thereby, regardless of the consent or wishes of the parent, or the existence of the prescribed conditions dispensing with such consent."

▉ It would appear, therefore, that the role of the State Department of Social Welfare in those cases in which the child has been abandoned and declared free from the custody and control of its parents is, as in other independent adoption proceedings, confined to the submittal to the court of an advisory report recommending or disapproving the proposed adoption.

The case of *In re Santos,* 185 Cal. 127 [195 P. 1055], relied upon by respondents, dealt with a petition to adopt an orphan child who was then in the legal custody of a court appointed guardian. The guardian withheld his consent to the adoption.

The Supreme Court held that the consent of the guardian was not necessary to the validity of the order because "the minor is in reality 'a ward of the court and the guardian is in effect an arm of the court and is subject to the control of the court in the discharge of his duties as such guardian. . . .' " The State Department of Social Welfare is not so related that it may be said to be "an arm of the court." The functions are clearly prescribed by statute. (See Civ. Code, § 224m et seq.; and Welf. & Inst. Code, § 1621, which permit it to make rules and regulations for performance of any service.) Pursuant to these sections the department has adopted elaborate rules for guidance of agencies in the performance of their obligations under a relinquishment agreement. There is no question but that the child involved was and is in the legal custody and under the control of a licensed adoption agency. ██ ██ The consent of the department was a necessary prerequisite to an order allowing the adoption of the child. It was never made a ward of the juvenile court.

The only question remaining is whether petitioners had the right to appeal to the court, in that proceeding, from the order refusing such consent, and whether the court, notwithstanding such refusal, had the power to grant such consent. We conclude that the position assumed by the Department of Social Welfare is a proper interpretation of the provisions of the statute as it applies to the so-called "agency adoptions," where abuse of discretion of the department or its arbitrary or capricious action is not claimed or placed in issue; that in other so-called independent adoption proceedings, the consent to be obtained from such agency, after an investigation, is nominally an approval or disapproval of the proposed adoption, and it is from this disapproval order that the section allows a review or appeal to the superior court. In such "independent adoption proceeding" the court, upon a proper showing, and notwithstanding such disapproval, may make an order for adoption.

There is presented no question of fraud or arbitrary action on the part of the Welfare Department or that it is withholding its consent capriciously or without reasonable justification as was the case in *McKenzie* v. *State Board of Control*, 197 Minn. 234 [266 N.W. 746, 104 A.L.R. 1460].

Whether, in an appropriate proceeding, a court may have jurisdiction to review the actions of the department in refusing to consent to an adoption in an agency adoption proceeding, if the department's refusal to consent is arbitrary

or the result of an abuse of discretion, is not before us for consideration since the evidence in the instant case does not so indicate. (*Morales* v. *Ingels*, 30 Cal.App.2d 182 [85 P.2d 907] ; *Adoption of Lingol, supra.*) It was clearly stated that the court's finding was as to the best interests of the child, drawn from substantial conflicting evidence on that subject.

Order reversed.

Barnard, P. J., and Mussell, J., concurred.

Upon written request, respondents' petition for a hearing by the Supreme Court was withdrawn April 20, 1953.