**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| YVETTE WILLIBY,<br>*Plaintiff-Appellee,*<br><br>v.<br><br>AETNA LIFE INSURANCE CO.,<br>*Defendant-Appellant.* | No. 15-56394<br><br>D.C. No.<br>2:14-cv-04203-<br>CBM-MRW<br><br>OPINION |

Appeal from the United States District Court
For the Central District of California
Consuelo B. Marshall, District Judge, Presiding

Argued and Submitted April 5, 2017
Pasadena, California

Filed August 15, 2017

Before: Milan D. Smith, Jr. and N. Randy Smith, Circuit
Judges, and Gary Feinerman, District Judge.[*]

Opinion by Judge Feinerman

---

[*] The Honorable Gary Feinerman, United States District Judge for
the Northern District of Illinois, sitting by designation.

## SUMMARY[**]

### Employee Retirement Income Security Act

The panel vacated the district court's judgment in favor of the plaintiff in an action under the Employee Retirement Income Security Act, challenging the termination of short-term disability benefits.

The panel held that the district court erred by reviewing the denial of the plaintiff's benefits claim de novo, rather than for an abuse of discretion. The short-term disability plan included a discretionary clause, and thus by its terms called for abuse of discretion review. The panel held that California Insurance Code § 10110.6, which invalidates such discretionary clauses in insurance plans, applied even though the disability plan was self-funded. ERISA, however, preempted § 10110.6 insofar as it applied. The panel remanded for the district court to review the benefits denial under the correct standard.

### COUNSEL

Matthew G. Kleiner (argued), San Diego, California, for Defendant-Appellant.

Christian J. Garris (argued), Los Angeles, California, for Plaintiff-Appellee.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**OPINION**

FEINERMAN, District Judge:

Plaintiff-Appellee Yvette Williby worked for The Boeing Company, which provided her with short-term disability payments through a plan that it self-funded. Defendant-Appellant Aetna Life Insurance Company administered the plan. After Aetna determined that Williby was not disabled and terminated her benefits, Williby brought suit under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461. Applying *de novo* review, the district court held that Aetna improperly denied Williby's claim. *See Williby v. Aetna Life Ins. Co.*, No. 2:14-CV-042032015 WL 5145499 (C.D. Cal. Aug. 31, 2015). Aetna appeals, contending that the district court should have reviewed the denial only for abuse of discretion. Aetna is correct, so we vacate and remand to the district court for reconsideration under the proper standard of review.

**BACKGROUND**

Boeing's short-term disability (STD) benefit plan for its employees pays them between sixty and eighty percent of their salary if, because of a disability, they cannot perform their usual job responsibilities or other similar work at Boeing. The STD plan is self-funded, meaning that Boeing does not purchase an insurance policy to cover its plan obligations; rather, Boeing pays benefits from its own coffers, and retains Aetna to administer the plan. *See FMC Corp. v. Holliday*, 498 U.S. 52, 54 (1990) (describing self-funded ERISA plans). There is a 26-week limit on STD benefits, after which the employee must apply for long-term disability (LTD) benefits.

The STD plan expressly provides Aetna with "full discretionary authority to determine all questions that may arise," including whether and to what extent a plan participant is entitled to benefits. This provision is known as a "discretionary clause." *See Standard Ins. Co. v. Morrison*, 584 F.3d 837, 840–41 (9th Cir. 2009) (describing discretionary clauses). The presence of a discretionary clause typically means that a court reviewing an adverse benefits determination will do so only for abuse of discretion. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006) (en banc).

Williby worked for Boeing as a Supply Chain Specialist, a position that required her to problem-solve, interact with customers and vendors, conduct research, and assess technical issues. In September 2011, she was briefly hospitalized after suffering either a stroke or a stroke-like episode. In November 2012, Williby found herself experiencing chronic headaches and other problems that caused her difficulty at work. In December 2012, she saw a neurologist, Dr. David Edelman, who performed various assessments. Computerized cognitive tests showed that Williby's overall cognitive function fell within a normal range, and an MRI revealed no "acute infarct"—brain tissue damage—and no hemorrhage. But Williby's executive functions—the ability to organize information and to respond quickly and accurately—"predicted a moderate likelihood of 'mild cognitive impairment.'" Dr. Edelman found that Williby suffered from "migraine, acute but ill-defined cerebrovascular disease, and vascular dementia uncomplicated," and on those premises concluded that she should go on disability "pending further testing." On December 12, 2012, Williby left her employment at Boeing, never to return.

Aetna approved Williby for STD benefits from December 20, 2012 through February 28, 2013 based on Dr. Edelman's testing and conclusions. However, Aetna denied Williby STD benefits for the period from February 28, 2013 through June 2013. Dr. Vaughn Cohan, the Aetna-retained neurologist responsible for the denial, reviewed the file, spoke with Dr. Edelman by telephone, and concluded that Williby could still work because, despite her executive function impairments, her cognitive function was normal overall, the MRI showed no "acute" abnormalities, and she had not undergone formal neuropsychological testing to follow up on Dr. Edelman's initial tests.

At several points between April and November 2013, Dr. Edelman reaffirmed his conclusion that Williby was unable to work. Also, between June 2013 and December 2013, Williby saw a second neurologist, a neuropsychologist, a psychologist, and a psychiatrist, all of whom agreed that she exhibited cognitive impairment and the majority of whom specifically determined that it disabled her from working.

After Aetna terminated Williby's STD benefits, she appealed the decision within Aetna, armed with the additional doctors' reports. Aetna hired an occupational medicine specialist and a neuropsychologist to review the case. Both reviewers concluded that there was insufficient objective documentation of Williby's disability, with the occupational medicine specialist explaining that any impairment was "self-reported" and "primarily based on mood disorder/behavioral issues," and the neuropsychologist concluding that "the provided information did not include sufficient findings to corroborate" Williby's claimed cognitive impairments or their interference with her work. Aetna upheld its decision to deny benefits in February 2014, determining that "there

was insufficient medical evidence to support continued disability" after February 28, 2013.

Williby then sued Aetna in the Central District of California for "breach of plan and recovery of plan benefits" under ERISA, invoking ERISA's jurisdictional provision, 29 U.S.C. § 1132(e). A bench trial ensued, based on the administrative record.

The district court reviewed *de novo* Aetna's denial of benefits, notwithstanding the STD plan's discretionary clause. The court did so based on its view that California Insurance Code § 10110.6—which voids any discretionary clause in "a policy, contract, certificate, or agreement . . . that provides or funds life insurance or disability insurance coverage"—governed the STD plan. In so holding, the court rejected Aetna's argument that Boeing's STD plan was beyond the scope of § 10110.6 because it was self-funded. The district court did not discuss whether ERISA preempted § 10110.6 under the circumstances of this case.

The district court then held that Williby was disabled from at least February 28, 2013 through June 20, 2013— when she would have reached the 26-week limit for receiving STD benefits—and that Aetna's decision to terminate her STD benefits sooner was improper. The court reasoned that there was no basis for Aetna's finding that Williby was disabled before February 28 but not after, as "[n]othing in the record suggests that Plaintiff's cognitive impairment ceased or improved" after that date. The court also gave "more weight to those doctors who treated Plaintiff"—all of whom concluded that she demonstrated cognitive impairment—and noted that Aetna's doctors simply reviewed the treating doctors' work.

In a footnote, the court added that its ultimate conclusion would remain the same "[e]ven under an abuse of discretion standard" and even "viewing Aetna's decision with no degree of skepticism since Aetna did not have . . . a direct financial incentive to deny benefits since benefits are funded by Boeing." The court explained briefly that Aetna's benefits denial failed to clear even the low abuse of discretion bar for two reasons: (1) every doctor who treated Williby thought she was disabled or demonstrated considerable cognitive impairment; and (2) although Aetna relied on a "lack of objective clinical support" in terminating her STD benefits, it never had its physicians examine Williby or asked her to undergo any particular testing.

Aetna timely appealed.

## DISCUSSION

This appeal requires us to determine whether the district court selected and applied the proper standard of review in this case. We find that it did not.

## I. The Abuse of Discretion Standard Governs Judicial Review of Aetna's Denial of STD Benefits

"We review de novo a district court's choice and application of the standard of review to decisions by fiduciaries in ERISA cases. We review for clear error the underlying findings of fact." *Estate of Barton v. ADT Sec. Servs. Pension Plan*, 820 F.3d 1060, 1065 (9th Cir. 2016) (quoting *Abatie*, 458 F.3d at 962).

Because it contains a discretionary clause, the STD plan by its terms calls for abuse of discretion review. The district court reviewed the benefits denial *de novo*, however, because it concluded that California Insurance Code

§ 10110.6 invalidated such discretionary clauses. On appeal, Aetna mounts a two-pronged attack on that conclusion. First, it contends that § 10110.6 does not apply to self-funded plans like the Boeing STD plan at issue here. Second, and in the alternative, it contends that even if § 10110.6 *does* apply to Boeing's plan, ERISA preempts it. So the district court's *de novo* review was appropriate only if § 10110.6 applies to the STD plan *and* ERISA does not preempt § 10110.6 under the circumstances of this case. Otherwise, the appropriate standard of review was abuse of discretion.

### A. Section 10110.6 Applies to Boeing's Plan

Section 10110.6 states, in relevant part:

> (a) If a policy, contract, certificate, or agreement offered, issued, delivered, or renewed . . . that provides or funds life insurance or disability insurance coverage for any California resident contains a provision that reserves discretionary authority to the insurer, or an agent of the insurer, to determine eligibility for benefits or coverage . . . that provision is void and unenforceable.

Cal. Ins. Code § 10110.6(a). The provision defines a "discretionary authority" provision as one that "confer[s] discretion on an insurer or other claim administrator to determine entitlement to benefits" and that, "in turn, could lead to a deferential standard of review by any reviewing court." *Id*. at § 10110.6(c). The provision bans the enforcement of discretionary clauses in California. *See Orzechowski v. Boeing Co. Non-Union Long-Term Disability Plan, Plan No. 625*, 856 F.3d 686, 692 (9th Cir. 2017) ("[I]f any discretionary provision is covered by the

statute, 'the courts shall treat that provision as void and unenforceable.'") (quoting Cal. Ins. Code § 10110.6(g)).

Aetna argues that § 10110.6 does not apply to Boeing's self-funded STD plan because the statute targets only "insurer[s]" and "insurance," which (according to Aetna) Boeing and its self-funded plan are not. This argument fails to persuade. True enough, the reach of § 10110.6(a) is limited to "a policy, contract, certificate, or agreement . . . that provides or funds life *insurance* or disability *insurance* coverage" (emphases added). But § 22 of the California Insurance Code defines "insurance" broadly as "a contract whereby one undertakes to indemnify another against loss, damage, or liability arising from a contingent or unknown event." Cal. Ins. Code § 22. The text of § 22, and by extension of § 10110.6(a), thus encompasses not only a traditional insurance policy issued by a traditional insurer, but also any "contract [that] . . . indemnif[ies] . . . against loss . . . arising from a contingent . . . event." We recognized precisely this point in *Orzechowski*, observing that "§ 10110.6(a) regulates entities engaged in insurance, even if they are not insurance companies," because it "is directed at *insurance*, not insurers." 856 F.3d at 694 (internal quotation marks and citation omitted).

The question then becomes whether Boeing provided "insurance" through its STD plan. "Section 22 has been interpreted as requiring two elements: (1) shifting one party's risk of loss to another party; and (2) distribution of that risk among similarly situated persons." *Auto. Funding Grp., Inc. v. Garamendi*, 7 Cal. Rptr. 3d 912, 915 (Cal. Ct. App. 2003). Boeing's contractual promise to pay its employees a portion of their usual salary if a medical problem rendered them unable to work fits this definition, for by offering a self-funded STD plan, Boeing (1) shifted

risk of financial loss due to injury from employees to itself and (2) spread that risk over its workforce. *See Selmon v. Metro. Life Ins. Co.*, 277 S.W.3d 196, 202 (Ark. 2008) (characterizing a self-funded LTD plan as a "risk-pooling agreement"); Julie K. Swedback, *The Deemer Clause: A Legislative Savior for Self-Funded Health Insurance Plans Under the Employee Retirement Income Security Act of 1974*, 18 Wm. Mitchell L. Rev. 757, 787 (1992) ("While an employer has the choice to fund its own benefit plan or to purchase a plan from an insurance company, the only distinguishable difference . . . in the nature of the benefit plan is the source of the funding. Even when an employer chooses to fund its own benefit plan, the plan provides a benefit schedule, assumes liability through a contractual document for payment of claims accorded by the benefit schedule, and designates the amount of employee contribution based on insurance principles of risk distribution."); *Introduction—Fundamentals of Self-Funding*, Employer's Guide to Self-Insuring Health Benefits ¶ 200, *available at* 2001 WL 35727768 ("[H]istorically, self-funding was used primarily by large companies that employed enough workers to establish their own sizeable risk pool and had significant cash flow that would allow them to bear the risk of paying claims without fear that the risk would harm the company substantially.").

Aetna retorts that Boeing's STD plan can constitute "insurance" under California law only if "the risk element of the contract is the principal object and purpose of the agreement." *See Transp. Guar. Co. v. Jellins*, 174 P.2d 625, 629 (Cal. 1946) (holding that the relevant question is not "whether risk is involved or assumed," but rather "whether that or something else to which it is related in the particular plan is its principal object and purpose") (citation omitted); *Garamendi*, 7 Cal. Rptr. 3d at 916. The cases on which

Aetna relies for this proposition concern risk-shifting provisions that were just one element of a broader contract whose primary object was not risk-shifting. *See Jellins*, 174 P.2d at 631 (holding that a contractual promise to perform maintenance on and procure insurance for a truck was not "insurance" because "the major part of [Party A's] service [to Party B] is the supplying of labor"); *Garamendi*, 7 Cal. Rptr. 3d at 919–20 (holding under *Jellins* that an optional provision of a used car loan that shifted some risk from the buyer to the seller was not "insurance"); *see also Truta v. Avis Rent A Car Sys., Inc.*, 238 Cal. Rptr. 806, 814 (Cal. Ct. App. 1987) (holding under *Jellins* that a "tangential risk allocation provision" did not make a rental car contract "insurance" because its "principal object and purpose" remained "the rental of an automobile"). Here, by contrast, the principal purpose of Boeing's STD plan *was* to shift risk, and thus Aetna's cases confirm, rather than refute, our conclusion that the plan is "insurance" under California law.

In sum, Aetna provides no sound reason to depart from the text of § 22, which brings within the scope of § 10110.6 Boeing's self-funded STD plan.

## B. ERISA Preempts Application of § 10110.6 to Boeing's Self-Funded STD Plan

The next question is whether ERISA preempts § 10110.6 insofar as it applies to Boeing's plan. ERISA contains three interrelated provisions governing its express preemption of state law: the "preemption clause," the "saving clause," and the "deemer clause." *FMC Corp.*, 498 U.S. at 57–58. The preemption clause provides that ERISA "shall supersede any and all State laws insofar as they may . . . relate to any employee benefit plan" covered by ERISA. 29 U.S.C. § 1144(a); *see Orzechowski*, 856 F.3d at 692. That clause "is conspicuous for its breadth. It establishes as an area of

exclusive federal concern the subject of every state law that relates to an employee benefit plan governed by ERISA." *FMC Corp.*, 498 U.S. at 58 (internal quotation marks and brackets omitted).

The saving clause creates a carve-out from the preemption clause, sparing from ERISA preemption—"[e]xcept as provided in" the deemer clause, of which more in a moment—"any law of any State which regulates insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A); *see FMC Corp.*, 498 U.S. at 58. "So, although ERISA has broad preemptive force, its saving clause then reclaims a substantial amount of ground." *Orzechowski*, 856 F.3d at 692 (internal quotation marks omitted).

Finally, the deemer clause qualifies the scope of the saving clause, reviving preemption for certain laws that the saving clause might otherwise carve out from the preemption clause. The deemer clause states that no "employee benefit plan [covered by ERISA] . . . shall be deemed to be an insurance company or other insurer . . . for purposes of any law of any State purporting to regulate insurance companies [or] insurance contracts." 29 U.S.C. § 1144(b)(2)(B). "Under the deemer clause, an employee benefit plan governed by ERISA shall not be 'deemed' an insurance company, an insurer, or engaged in the business of insurance for purposes of state laws 'purporting to regulate' insurance companies or insurance contracts." *FMC Corp.*, 498 U.S. at 58. The Supreme Court has rejected the proposition that the deemer clause applies only to "state insurance regulations that are pretexts for impinging upon core ERISA concerns." *Id*. at 63. Instead, a state insurance regulation is preempted to the extent it operates directly on an ERISA plan, even if its stated intent is not pretextual. *See id*. at 61–65.

In *Orzechowski*, this court held, for purposes of the LTD plan at issue there, that although § 10110.6 fell within the scope of the preemption clause, it was "saved" from preemption by the saving clause. 856 F.3d at 692–95. *Orzechowski* followed *Standard Insurance Co. v. Morrison*, 584 F.3d 837 (9th Cir. 2009), which held that a Montana ban on discretionary clauses in insurance contracts was not preempted because it fell within the saving clause. *Id*. at 849. Significantly, neither *Orzechowski* nor *Morrison* addressed the deemer clause, and the reason reveals a key distinction between those two cases and this one.

Unlike Boeing's STD plan, the disability plans at issue in *Orzechowski* and *Morrison* were not self-funded; rather, they were funded by insurance policies. *See Orzechowski*, 856 F.3d at 689; *Morrison*, 584 F.3d at 840 (noting that the state regulatory practice under review applied only to "insurance contract[s]"). This matters because the Supreme Court in *FMC Corp*. held that the deemer clause's scope turns on the presence or absence of traditional insurance. If the state law is applied to a traditional insurance policy, then the state law falls outside the deemer clause and thus within the saving clause—even if the insurance policy backstops an ERISA plan. On the other hand, if the state law is applied to an ERISA plan itself, which is how such laws operate on self-funded plans, the law falls within the deemer clause and thus is preempted, even if it is a bona fide insurance regulation that only incidentally affects ERISA concerns. *See FMC Corp.*, 498 U.S. at 64. The result is a simple, bright-line rule: "if a plan is insured, a State may regulate it indirectly through regulation of its insurer and its insurer's insurance contracts; if the plan is uninsured, the State may not regulate it." *Id.* The Court thus concluded: "We read the deemer clause to exempt self-funded ERISA plans from state laws that 'regulat[e] insurance' within the meaning of the

saving clause." *Id*. at 61; *see Scharff v. Raytheon Co. Short Term Disability Plan*, 581 F.3d 899, 907 (9th Cir. 2009) ("[U]nder ERISA's 'deemer clause,' state insurance regulation of self-funded plans is preempted by ERISA."). Thus, for a self-funded disability plan like Boeing's, the saving clause does not apply, and state insurance regulations operating on such a self-funded plan are preempted.

This point is so clear that Williby does not dispute that ERISA preempts § 10110.6 as applied to self-funded ERISA plans. Williby instead asserts—for the first time in this litigation—that Boeing's STD plan is not an ERISA plan at all. Citing *Bassiri v. Xerox Corporation*, 463 F.3d 927, 929 (9th Cir. 2006), she argues that the STD plan is actually a "payroll practice" and therefore exempt from federal regulation under ERISA.

That argument is untenable at this late juncture. Here, not only did Williby press exclusively ERISA-based claims in the district court, she staked federal jurisdiction on the foundational premise that ERISA governs her suit. Williby has thus forfeited any claim that the STD plan was an ERISA-exempt "payroll practice." *See Armstrong v. Brown*, 768 F.3d 975, 981 (9th Cir. 2014) ("[A]n issue will generally be deemed waived on appeal if the argument was not raised sufficiently for the trial court to rule on it."); *Komatsu, Ltd. v. States S.S. Co.*, 674 F.2d 806, 812 (9th Cir. 1982) (deeming an issue waived where the party had "relied . . . exclusively" in the district court on other arguments).

ERISA therefore applies to Boeing's self-funded STD plan and preempts § 10110.6's application thereto. The district court thus should have honored the plan's

discretionary clause and reviewed Aetna's denial of benefits to Williby, not *de novo*, but for abuse of discretion.[1]

## II. Remand Is Necessary To Permit the District Court to Properly Apply the Abuse of Discretion Standard

The question remains whether there is any need to remand. Williby argues that the district court has already applied the abuse of discretion standard and that the panel should simply affirm on that ground. Aetna counters that the district court paid only lip service to the abuse of discretion standard and applied it improperly, and so should be asked to revisit the issue on remand. Whether an ERISA plan administrator abused its discretion is a legal determination that we review *de novo*. *See Nolan v. Heald Coll.*, 551 F.3d 1148, 1153 (9th Cir. 2009).

The parties' briefing of this issue focuses on whether the district court applied what is known as the "treating physician rule." The treating physician rule was a rule of thumb, formerly applied in this circuit, under which a court reviewing a benefits denial would "give[] especially great weight to the opinion of a claimant's treating physician." *Jordan v. Northrop Grumman Corp. Welfare Benefit Plan*,

---

[1] Before proceeding, we address a question that might occur to the attentive reader: If the court was going to hold § 10110.6 preempted by ERISA in the context of Boeing's STD plan, why not just assume for the sake of argument that § 10110.6 applied to Boeing's plan rather than affirmatively hold as a matter of California law that it does? The reason is that the Supreme Court has described preemption as "a two-step process of first ascertaining the construction of the two statutes and then determining the constitutional question whether they are in conflict." *Chi. & Nw. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 317 (1981) (quoting *Perez v. Campbell*, 402 U.S. 637, 644 (1971)). Applying that precedent faithfully required that we first resolve the California law issue to determine the necessity of addressing the preemption question.

370 F.3d 869, 878 (9th Cir. 2004), *overruled on other grounds as recognized by Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 673–74 (9th Cir. 2011).  The rule required ERISA plan administrators to "either accept the opinion of a claimant's treating physician, or, if the administrator rejects that opinion, come forward with specific reasons for that decision, based on substantial evidence in the record."  *Id.* (internal quotation marks omitted).  The Supreme Court rejected the treating physician rule in *Black & Decker Disability Plan v. Nord*, 538 U.S. 822 (2003), holding that "courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation."  *Id.* at 834.  The parties disagree whether the district court ran afoul of that holding.

The district court offered this explanation for its conclusion that Aetna abused its discretion in terminating Williby's STD benefits:

> Aetna's decision was illogical, implausible, or without support in inferences that could reasonably be drawn from facts in the record because (1) all of the doctors who personally treated Plaintiff concluded that she was disabled or demonstrating considerable cognitive impairment; and (2) Aetna's reviewing doctors cited to lack of objective clinical support, but there is no evidence that Aetna requested for Plaintiff to be examined by its physicians or undergo the specific testing it needed to support an objective, clinical finding of functional

impairment.  *See, e.g.*, *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d [666,] 666–76 (9th Cir. 2011).

This does sound perilously close to the treating physician rule.  But we need not decide whether the district court actually applied that rule because, regardless, the court did not identify or implement the correct standard.

The district court said it was "viewing Aetna's decision with no degree of skepticism since Aetna did not have a conflict of interest."  That statement properly recognized that when a plan administrator is also the payor of the employee's benefits and thus has a direct financial incentive to deny claims, the resulting "conflict of interest" becomes a significant contextual factor in the abuse of discretion analysis.  *See Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 112, 117 (2008); *Harlick v. Blue Shield of Cal.*, 686 F.3d 699, 707 (9th Cir. 2012) ("[O]ur review is tempered by skepticism when the plan administrator has a conflict of interest in deciding whether to grant or deny benefits.") (internal quotation marks omitted).  We explained the significance of an administrator's conflict of interest for abuse of discretion review in *Montour v. Hartford Life & Accident Insurance Co.*, 588 F.3d 623 (9th Cir. 2009):

> In the absence of a conflict, judicial review of a plan administrator's benefits determination involves a straightforward application of the abuse of discretion standard.  In these circumstances, the plan administrator's decision can be upheld if it is grounded on *any* reasonable basis.  In other words, where there is no risk of bias on the part of the administrator, the existence of a

> single persuasive medical opinion supporting the administrator's decision can be sufficient to affirm, so long as the administrator does not construe the language of the plan unreasonably or render its decision without explanation.

*Id*. at 629–30 (internal quotation marks and citation omitted). But when the administrator and payor are one and the same,

> [s]imply construing the terms of the underlying plan and scanning the record for medical evidence supporting the plan administrator's decision is not enough, because a reviewing court must take into account the administrator's conflict of interest as a factor in the analysis.

> More particularly, the court must consider numerous case-specific factors, including the administrator's conflict of interest, and reach a decision as to whether discretion has been abused by weighing and balancing those factors together. Under this rubric, the extent to which a conflict of interest appears to have motivated an administrator's decision is one among potentially many relevant factors that must be considered.

*Id*. at 630 (internal citations omitted). Aetna has no such conflict of interest here, as Boeing funded the STD plan. Yet the district court supported its abuse of discretion holding with a lone citation to *Salomaa v. Honda Long Term*

*Disability Plan*, 642 F.3d 666 (9th Cir. 2011), a case where the administrator *did* have a conflict of interest. *Id*. at 674.

The district court's exclusive reliance on *Salomaa* leaves us unable to say with the requisite level of certainty that it applied the correct standard. Because a conflict of interest existed in *Salomaa*, the abuse of discretion review was of the probing variety described in *Montour*; that level of review is inappropriate here. *See id.* at 673–76. Moreover, our observation in *Salomaa* that "every doctor who personally examined [the employee] concluded that he was disabled" was just one factor among many contributing to the court's skepticism of the administrator's conclusion that the employee was not disabled; we also noted, among other things, that the plan administrator failed to consider that the plaintiff had been awarded Social Security disability payments and that its shifting explanations were at odds with the medical records. *See id*. at 676. The district court here did not rely on such circumstances in holding that Aetna abused its discretion.

Faced with only the district court's recital of the abuse of discretion standard and a single citation to an inapposite case, we cannot be confident that the district court applied the abuse of discretion standard correctly. We therefore remand to allow the district court to review the benefits denial anew under the correct standard. In remanding, we express no opinion as to what the outcome should be. *See Arizona v. City of Tucson*, 761 F.3d 1005, 1015 (9th Cir. 2014).

## CONCLUSION

For the foregoing reasons, the district court's judgment is VACATED and the matter is REMANDED for further consideration consistent with this opinion.