TERRY F. MOORER, UNITED STATES MAGISTRATE JUDGE
Pending before the Court is Plaintiff's Motion to Compel filed March 22, 2018 (Doc. 71), Defendants' Response thereto filed April 6, 2018 (Doc. 78), and Plaintiff's Reply filed April 9, 2018. (Doc. 79). At the heart of the Motion to Compel lies the issue of which standard of review applies in this ERISA action for Long Term Disability benefits. Thus, the Court will first address the standard of review question.
I. Standard of Review - Arbitrary and Capricious or De Novo
The law is clear; actions for termination of ERISA plan benefits should be judicially reviewed under the de novo standard "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch , 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). The parties agree that the Plan vests discretionary authority on Defendant LINA, which normally requires the application *1257 of the arbitrary and capricious standard and limits the scope of discovery. The parties also recognize that the policy contains a choice of law provision requiring the application of Delaware law and the Wraparound Plan contains a provision requiring the application of California law.
Plaintiff argues because the Wraparound Plan contains a provision requiring the application of California law that the de novo standard applies in the instant action since California law nullifies discretionary clauses like the ones in the Plan at issue. See Williby v. Aetna Life Ins. Co. , 867 F.3d 1129 (9th Cir. 2017). On the other hand, Delaware has no state law nullifying discretionary clauses, see Goble v. Liberty Life Assur. Co. , 2013 WL 5603871, *8-9, 2013 U.S. Dist. LEXIS 147272, *24 (D.N.J. Oct. 11, 2013), and Defendants argue that this choice of law provision controls. Thus, the question before the Court is one of contract construction. Specifically, the Court must decide which choice of law provision applies.
Initially, Defendants argue that Plaintiff ignored the choice of law provision found in the policy, which states that Delaware law controls, and instead relied upon the choice of law provision found in the Wraparound Plan Document, which states that California law controls. In support of its position that Delaware law controls, the Defendants point to language from the Wraparound Plan Document which states that, "in the case of any omission or conflict between the language of the Summary Plan Description and the plan documents, contracts and policies, the terminology and provisions found in the plan document, contract or policy for that Health and Welfare Program will control with regard to the benefits provided to the employees and beneficiaries." (Doc. 61 at pp. 7-8). However, this argument ignores the plain fact that the Summary Plan Description contains no choice of law provision. Rather, the conflicting provisions are contained in the Wraparound Plan Document and the policy. In light of the confusion arising from this argument, the Court asked the parties for supplemental briefing on the relationship between the Wraparound Plan Document and the policy.
Specifically, by Order of April 2, 2018, the Court asked the parties to brief outstanding issues as follows:
1) What is the relationship between the ERISA Policy or Plan and the Wrap Around Plan Document? Specifically, which document governs the Court's determination of which choice of law provision applies in this case and why?
2) Why should the ambiguity or discrepancy between the choice of law provisions not be resolved against the Defendants under the principles of contract construction which require any ambiguity in a contract to be construed against the drafter?
(Doc. 77). Defendants failed to provide a direct response to the first question. Rather, Defendants have made arguments about the meaning of various contract provisions to support their theory that Delaware law should control and mandate the application of the arbitrary and capricious standard. The Court will address those arguments now.
In response to this Order, Defendants point to additional contract language, in support of their position that the choice of law provision in the policy controls. Specifically, Defendants point to language in the Wraparound Plan Document which states that it, "together with the Plan's Summary Plan Description, ... and any insurance contracts providing benefits under the Health and Welfare Programs, ... to the extent incorporated by reference herein will constitute the written plan document for the Plan." (Doc. 82 at p. 2). Thus, the *1258 Court concludes that this contract language clearly states that the "written plan document for the Plan" consists of three documents - 1) the Wraparound Plan Document, 2) the Summary Plan Description and 3) the policy or "insurance contracts providing benefits under the Health and Welfare Programs". Further, Defendants point to language in the Wraparound Plan Document which states that "[f]or the Health and Welfare Programs described as ERISA-covered benefits in the Summary Plan Description, the plan documents, contracts, and polices that govern them are incorporated by reference into this document as if set forth fully herein." (Doc. 82 at p. 3). Also, Defendants point to language in Article IV of the Wraparound Plan Document which states that "[a]n insured Health and Welfare Program that provides benefits described in this Article remains subject to the terms of the insurance policies and/or contracts, which are incorporated into this document as if set for the fully herein." (Doc. 82 p. 4).
Defendants argue that this language confirms the policy terms override the terms of the Wraparound Plan Document because the Wraparound Plan Document recognizes that the policy "govern[s]" or that the benefits in Article IV are "subject to" the terms of the policy. The Court recognizes that these provisions could be read this way, but also recognizes that another reading is equally plausible. That is -- this language includes "plan documents, contracts and policies" or "insurance policies and/or contracts" as the governing documents for the Health and Welfare Programs and incorporates them into the overarching Wraparound Plan Document, which generally governs or controls the Plan. Therefore, the Court concludes that Defendants' arguments fail to provide any logical reason why provisions in the policy control over provisions in the Wraparound Plan for purposes of determining which state law to apply.
The Defendants also provide the Declaration of Edwin Quick, who is currently employed by Apple Inc. as Disability and Leave Manager. (Doc. 82-3 at p. 2). Quick purports to construe the various contracts at issue here by restating the previously discussed arguments of Defendants and concludes that "Apple Inc. intended the long-term disability policy's terms and conditions to apply to and govern a claim for long-term disability benefits under the Plan." (Doc. 82-3 at p. 3). However, the Court is not persuaded that the Quick Declaration answers the question for a couple of reasons. First, the Court has previously explained why it does not credit the Defendants' attempts to construe the terms of the policy as overriding the terms of the Wraparound Plan. Second, the Declaration fails to contain facts from which the Court may conclude that Quick is in the position of having personal knowledge concerning Apple Inc.'s intent as to which choice of law provision controls. Thus, Defendants' arguments fail to convince the Court that the LTD policy provisions override the provisions in the Wraparound Plan.
For the reasons discussed above, the Court concludes that the plan documents contain conflicting choice of law provisions, neither of which is controlling under the terms of the contract. Thus, the Court concludes that the contract at issue here is ambiguous insofar as it has two choice of law provisions that conflict as to which state law applies. See, Dahl-Eimers v. Mutual of Omaha Life Ins. Co. , 986 F.2d 1379 (11th Cir. 1993) ("An insurance contract is ambiguous if it is susceptible to two or more reasonable interpretations that can fairly be made.") The Eleventh Circuit has held in the ERISA context that if a plan is ambiguous "we must construe the ambiguities against the drafter, and the claimant's interpretation is considered *1259 correct." See Tippitt v. Reliance Standard Life Ins. Co. , 457 F.3d 1227, 1235 (11th Cir. 2006). The Court concludes, under the facts of this case, it must accept the Plaintiff's interpretation that the provisions of the Wraparound Plan are controlling, and as such, the California choice of law provision applies making application of the de novo standard appropriate in this ERISA action.
The Court is mindful of Defendants' argument that the Court should adopt LINA's interpretation that the Policy's choice of law provision applies under the analytical framework established in Blankenship v. Metro Life Ins. Co. , 644 F.3d 1350, 1355 (11th Cir. 2011). The Blankenship Court stated:
For a court reviewing a plan administrator's benefits decision, the present Williams[1] test goes this way:
(1) Apply the de novo standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision) if it is not, then end the inquiry and affirm the decision.
(2) If the administrator's decision in fact is "de novo wrong", then determine whether he was vested with discretion in reviewing claims' if not, end judicial inquiry and reverse the decision.
(3) If the administrator's decision is "de novo wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds support it (hence, review his decision under the more deferential arbitrary and capricious standard).
(4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.
(5) If there is no conflict, then end the inquiry and affirm the decision.
(6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.
Id. Defendants argue that the Court must determine at the first step whether the contract's term is ambiguous, and if so, then move to a determination whether the plaintiff proposed a reasonable alternative interpretation. However, this approach assumes the administrator was vested with discretion to reach the reasonableness question. That is the precise question which the instant conflict of laws quandary answers. That is -- under California law there is no discretion because discretionary clauses are void, so the de novo standard is applied. While under Delaware law, discretionary clauses are valid and the arbitrary and capricious standard is applied. Thus, Defendants' argument assumes the conflict of laws question is answered in the favor of Delaware law and discretion mandates application of the arbitrary and capricious standard. The Court refuses to apply this circular logic.
Rather, the Court has previously concluded that because the contract at issue is ambiguous and both Plaintiff and Defendants have provided plausible explanations, that this ambiguity is resolved against Defendants as drafters. This conclusion results in an application of de novo *1260 review in the instant action. Stated another way, since the administrator was not vested with discretion under California law, this case must be determined under steps one and two, without reaching Steps three and beyond. Indeed, the Firestone Court has counseled that the de novo standard of review is the default standard under ERISA, noting that where the plan does not give the administrator discretionary authority, the court is to "review[ ] the employee's claim as it would have any other contract claim - by looking to the terms of the plan and other manifestations of the parties' intent." 489 U.S. at 112-113, 109 S.Ct. 948. Thus, the Court concludes that Defendants' argument based on the Williams analysis does nothing to alter its prior conclusion that California law applies making the de novo standard applicable in this action.
II. Motion to Compel
For the reasons stated above, the Court concludes that the de novo standard of review applies in this instant action. Since the de novo standard requires a greater breadth of discovery than the arbitrary and capricious standard under which Defendants have previously produced documents, the Court concludes that on or before August 17, 2018, Counsel for the parties shall conduct a face to face meeting to discuss the parameters of discovery and the schedule in this action and shall file with the Court a Revised Rule 26(f) Report. The Court further concludes that the Motion to Compel is due to be denied with leave to refile if the discovery issues can not be resolved at the face to face meeting of the parties in light of this Court's ruling on the standard of review.
III. Conclusion and Order
Accordingly, it is
ORDERED that the standard of review to be applied in this ERISA action is the de novo standard. It is further
ORDERED that the Motion to Compel (Doc.71) be and hereby is DENIED with leave to refile if the discovery issues can not be resolved at a face to face meeting of counsel for the parties to be conducted on or before August 17, 2018 in light of this Court's ruling on the standard of review. It is further
ORDERED that the Rule 26(f) report containing the discovery plan shall be filed as soon as practicable but not later than August 17, 2018.
Dispositive motions shall be filed no later than 180 days prior to the pretrial hearing/conference date. If the parties seek to vary from that schedule, they should present, in the plan, specific case-related reasons for the requested variance. In their Rule 26(f) report, however, the parties should assume that the 180-day requirement will apply when the court enters the Rule 16(b) Uniform Scheduling Order (USO).
It is also the policy of this district that Rule 26(a)(3) witness list exchange (§ 9 USO), deposition designations (§ 10 USO), and exchange of trial exhibits and evidence (§ 11 USO) occur no later than 42 days prior to trial, to allow appropriate time for filing and resolution of objections and motions related thereto. The parties may agree to longer deadlines, but shorter deadlines ordinarily will not be allowed.
This case ordinarily will be set for trial during one of the presiding judge's regularly scheduled civil trial terms, within 14 to 16 months of this order if a term is available and, if not available, then as soon as possible thereafter. The pretrial date is normally set within four to eight weeks of a scheduled trial term. The dates of each judge's civil trial terms are available on the court's website located at http://www.almd.uscourts.gov.
*1261 The court may or may not hold a scheduling conference before issuing a scheduling order. The scheduling order entered by the court will follow the form of the Uniform Scheduling Order adopted by the judges of this court. The Uniform Scheduling Order is also available on the court's website.

Williams v. BellSouth Telecomms., Inc. , 373 F.3d 1132, 1137-38 (11th Cir. 2004)